DELTA LUMBER CO. *v.* GREENWOOD BANK & TRUST CO.

[86 South. 590.   No. 21359.]

MECHANICS' LIENS. *Builder's contract may be assigned before service of statutory notice on the owner.*

Where a party contracts to erect a building and assigns such contract before the service of statutory notice on the owner by materialmen and subcontractors, the assignment is valid, and the assignee of such contract will be given the proceeds of such contract, even though materialmen and subcontractors have furnished material or labor in the erection of such building which have not been paid. *Spengler* v. *Stiles-Tull Lbr. Co.*, 94 Miss. 780, 48 So. 966, 19 Ann. Cas. 426, cited.

APPEAL from chancery court of Leflore County.
HON. W. F. GEE, Chancellor.

Suits by Joe Stien, owner, against the Greenwood Bank & Trust Company, the Delta Lumber Company, and others, with answer and cross-bill by Greenwood Bank & Trust Company against materialmen and other defendants, and answer and cross-bill by Delta Lumber Company and the other materialmen against the Greenwood Bank & Trust Company. Money paid into court by owner directed to be paid to Greenwood Bank & Trust Company, and Delta Lumber Company appeals. Affirmed.

*J. B. Harris,* for appellant.

What is the difference in principle between the case at bar and those cases holding that the transfer of personal property consumable in its use by the assignor, vendor or mortgagor is fraudulent and void as to the creditors of the assignor, the rule is well settled in this state, if an instrument transferring personal property, consumable in its use, reserving the right to party making the transfer in possession to use the property, or any part thereof for his own benefit is void upon its face. *Farmers Bank* v. *Douglas,* 11 S. & M. 469; *Ewing* v. *Cargill,* 13 S. & M. 79; *Harman* v. *Hoskins,* 56 Miss. 142; *Johnson* v. *Dick,* 27 Miss. 277; *Lumber Company* v. *Hoyt,* 71 Miss. 106.

This principle is well settled, and it seems to be equally well settled that while a transferring of property, consumable in its use, where the instrument making the transfer does not provide that the party making the transfer may use the property for his own benefit, yet the transaction while not conclusively fraudulent, is *prima facie* so and throws the burden of proof on the transferee to establish the fairness of the transaction. *Carter* v. *Graves,* 6 H. 9; *Rankin* v. *Holloway,* 3 S. & M. 614; *Comstock* v. *Hayward,* 12 S. & M. 369, and authority cited above. Is there any more fairness in doing the thing in fact, though not provided for in the writing? Does not the act itself make the transaction fraudulent in law?

In many states it is provided by statute that a sale or mortgage of chattels not accompanied by an immediate delivery and a continued change of possession is fraudulent and void as against existing creditors of the vendor and subsequent purchasers in good faith. See 20 Cyc., 537 and 550. The principle underlying all of this is that such transactions are against public policy. However innocently made, the law condemns them.

While in the case at bar the assignment is valid on its face. It seems to us that on principle the transaction should be condemned because the assignee, the bank, knew

that Garber was receiving the money from the builder, depositing it to his individual credit and checking it out for his purpose, and purposes not connected with the building.   Certainly a tactit consent of this character should condemn the transaction as completely as if the transfer itself had provided that Garber should deal with the money in the manner as it is shown he did deal with it to the knowledge of the bank.   Money is certainly personal property, consumable in its use, nothing is more so.   The bank knew that Garber was receiving and in possession of the money which he purported to assign to it.   It was deposited in the Bank to Garber's individual credit and the bank knew that Garber was checking it out.

Why is not such a transaction as this against public policy and why should an exception be made in a case of this character to the ordinary rule governing such a transaction.   I have found no case making an exception.

The bank knew it was not receiving one cent of the money from the builder directly.   It knew that all of the money was being paid to Garber, deposited to his individual account and was being consumed by him for any and all purposes for which he saw fit to use the money.   The bank knew that the money which had been assigned to it was primarily intended for the payment for material and labor, yet no check was put upon Garber in the use of this money so long as he paid the bank the money which it from time to time advanced.   We are unable to see why this transaction does not offend public policy to the same extent that any other transfer or sale of personal property, the seller and assignor retaining the property and applying it to his own use.

There certainly can be no difference in legal effect between the case where the instrument making the transfer provides that the seller or assignor shall retain any possession and use of the property, and a case where the assignee or transferee actually knows and assents to the assignor or seller retaining possession and use of the property for his benefit.

We respectfully submit that the judgment of the court below should be reversed.

*Alfred Stoner,* for appellant.

There was never a time when the lumber company, according to the contention of the appellee, could have protected itself by serving the statutory stop-payment notice on the owner of the building, because the bank says that it could have stopped Stien from paying the money to the contractor whenever it suited its convenience.

Equity is equally careful to avoid injustice to third persons as to parties, and therefore will deny for laches the claim of one who has slept on his rights until third persons have acquired rights which would be affected by granting him relief. 16 Cyc. 163.

And again we find in 20 Am. & E. Ency. of Law (2 Ed.), "the holder of a mechanic's lien may waive his priority over incumbrances junior to his lien, or by his conduct, lose or become estopped to assert his priority, and conversely, the holder of an encumberance prior to the mechanic's lien may waive or lose his precedence."

Stien owed a balance for the erection of the building when the stop-payment notice was served on the lumber company. It is evident that the balance would have been paid to the contractor, just as all former payments had been made, but the bank, discovering its perilous position, and discovering that it had been asleep while Garber disposed of the money for other purposes, rushed in and notified the owner of the building that they had decided to require him to make future payments to the bank. The Delta Lumber Company and one or two others having already, at this time, served their stop-payment notices, the owner of the building, then of course instead of paying the money to the contractor, as theretofore and instead of paying it to the lumber company, or to the bank, paid it into court.

In *Scott & Garrett* v. *Greenriver Lumber Company,* 116 Miss 524, 77 So. 309, Judge ETHRIDGE says: "It is a familiar principle of law that where two parties are in a situa-

tion where one or the other must suffer for the default or act of some third person, and one of the parties has it within his power to prevent by reasonable means, either party from suffering, and fails to do so, he will be held responsible for the loss which he might have obviated."

It is our opinion that if *hocus pocus* assignment and conduct of this kind should be upheld by the courts, it would certainly open the gate to fraud, and the statute allowing materialmen and necessitious day laborers on buildings to protect themselves by serving stop-payment notices on the owners of buildings would, in the hands of unscrupulous contractors, become a nullity. The truth of it is, it appears to us, the statute would become a snare or allurement, for while it attempts to hold the dishonest contractor to account, the contractor, by pretending to assign the contract when the building is begun, could not collect all the proceeds of the contract himself until the laborers and materialmen served notices, whereupon he could easily evade the statute by alleging that the proceeds were long since assigned.

In 16 Cyc. 87, we find, contracts contrary to the policy of a statute are in like manner treated as if fraudulent. In the same catagory transactions have sometimes been placed which were not in their inception illegal and not technically fraudulent, but the effect of which, if not relieved against, would be similar to that of a successful fraud."

Equity will not aid the person whose danger was created by his own neglect, 16· Cyc. 140; *Commons* v. *Tapley,* 101 Miss. 203, 57 So. 567, only the opinion on suggestion of error is in point. In this case Judge Smith says, the laws serve the vigilant and not those who sleep over their rights, and he says further that when the law sees negligence on one side and injury therefrom on the other it is a good ground for denial of relief. And further, nothing can call forth this court into activity but conscience, good faith, and reasonable diligence. Where these are wanting the

court is passive and does nothing.  Laches and neglect are always discountenanced.

If the bank had a *bona fide* assignment, thefact that the money due under it was not collected by the bank would, we think, amount to a waiver of it, on account of the laches of the bank.

Laches is not like limitations, a mere matter of time but principally a question of inequity of permitting a claim to be enforced, and when this inequity exists a court will refuse relief, although the time which has elapsed since the alleged injury is less than that which is made a bar by the statute of limitations.  *Gale* v. *Pennington* (Ala.), 64 So. 672.

We respectfully submit that the decree of the lower court should be reversed both because, if they ever had an assignment, it was waived by the conduct and laches of the bank in allowing the contractor to collect and spend the money after it was assigned, and further, because, under the circumstances, it would be contrary to the policy of the statute in favor of materialmen to grant the bank relief as against the lumber company, and respectfully submit that a decree should be entered here in favor of appellant for the amount admitted to be due it for material amounting to nine hundred twenty-two dollars and forty-nine cents, with legal interest from January 24, 1917.

*Pollard & Hanner,* for appellees.

The *Spengler case,* 94 Miss. 780, and *Pech-Hammond Co.* v. *Williams,* 77 Miss. 824, are decisive in this case and the propositions there announced are so thoroughly the settled law in Mississippi that the proposition is not now open to question.  This court has recently reaffirmed the Spengler case in *Jake Strickland Lumber Co.* v. *Rheinhart,* 76 So. 643.  Counsel for appellant in his brief assumes as a fact that the assignment to the bank was disregarded and was therefore, waived.  The proof does not sustain this view.  No money was to be advanced to Garber by the

bank until and unless the order on Stien was given and accepted by Stien.

The suggestion is made by counsel for appellant that Garber should not have been permitted to spend the money paid by Stien for any purpose except the payment of his creditors who furnished labor and material for the building. The further contention is made that the assignment was secret between Stien, the bank and Garber. The Spengler case answers these contentions so thoroughly and so completely that we merely quote 94 Miss. 806; quoting from a New York case, the New York rule being particularly adopted in Mississippi by the holding in the Spengler case. There is no provision in the statute forbidding the contractor to pay his creditors out of money due or to become due him from the owner to the exclusion of laborers and materialmen who have not filed liens. Again at page 807: The laborer or materialman has no preferential right to be paid out of the sum due the contractor until he files notice of lien. Undoubtedly Garber would have had the right to apply the money coming from Stien under this contract to pay any debt that he might owe whether for material and work on the building or not, and the bank as assignee of Garber would have had a perfect right to do the same thing. Again referring to the *Spengler case,* 94 Miss. 815, learned counsel for appellees seem to be of the opinion that an assignment would not have been good as against supplies for debt due assignee by assignor if that debt did not grow out of the construction of this building. This is a wholly erroneous view. These assignments are valid without notice to anybody except the assignor, the assignee and the holder of the fund assigned. Referring again to the *Spengler case,* 94 Miss. 811: "An assignment in language operating *in praesenti* of money due and to grow due from a third person effects an immediate and present transfer to the assignee of the right to demand and receive the money assigned without notice to the debtor, and after such assignment, the debtor no longer owes the assignor but does owe and will owe to the

assignee what he would otherwise owe to the assignor."
Again, page 811 continuing, the court stated through
Judge WHITFIELD: "These appellees were not entitled to
any notice of this assignment, a thoroughly well-settled
proposition. Again, page 813: "If that assignment was
duly executed and delivered to the appellants prior to the
time when these appellees secured any lien by service of
the stop notices, it is too clear for argument that the as-
signees must prevail over these appellees because of the
universal equitable doctrine that he who is first in time
is first in right. That is this whole case, stripped of all
the confusion which has been thrown around it, growing
out of the misconception that in some way, or somehow,
or somehow else, these materialmen should be preferred to
these assignees exactly why no one can tell. They had no
lien until they served the stop notices. Long prior to that
appellants had the assignment. We feel this should final-
ly, fully and completely settle any doubt regarding the de-
cision of the lower court in the instant case.

We can conceive of no state of case except where palp-
able fraud was perpetrated and the money paid by the
owner absolutely squandered under a conspiracy of the
bank, Stien and Garber to defraud the creditors that would
justify setting aside the assignment on which appellee re-
lies, and certainly there is no element of fraud even sug-
gested in this case.

ETHRIDGE, J., delivered the opinion of the court.

One Joe Stien contracted with I. C. Garber to erect a
hotel building located in the city of Greenwood, and there-
after Garber entered upon the work and afterwards as-
signed the contract to the Greenwood Bank & Trust Com-
pany and gave an order to Stien, the owner, to pay over
to the Greenwood Bank & Trust Company all payments
of money due from time to time under the contract. After-
wards Garber contracted with various parties for material
and labor for the said building. From time to time the

work was approved under the contract by the architect and moneys paid to Garber, which were deposited in the bank; Garber giving his notes to the bank for money from time to time and depositing the checks made to him for the work to his account. During the life of the contract Garber became bankrupt, and when the circumstances of his financial condition became known, and after the assignment to the bank above stated, the various parties who had furnished material served notice on the owner of the building of their respective claims. Thereupon the owner filed his bill in chancery tendering the money still due under the contract in the court, making the Greenwood Bank & Trust Company and the Delta Lumber Company and other parties interested parties to the suit. The Greenwood Bank & Trust Company filed its answer to said suit, making its answer a cross-bill against the materialmen and other defendants, and the Delta Lumber Company filed its answer and made its answer a cross-bill against the Greenwood Bank & Trust Company, and the other materialmen did likewise. The chancellor's decree upheld the contention of the Greenwood Bank & Trust Company and directed the money paid in court to be paid to it from which judgment the Delta Lumber Company appeals here.

We think this cause is controlled by the case of *Spengler* v. *Stiles-Tull Lbr. Co.,* 94 Miss. 780, 48 So. 966, 19 Ann. Cas. 426. The court below held in accordance with these views, and its holding is supported by evidence, and the cause is affirmed.

*Affirmed.*