FIRST NAT. BANK OF ABERDEEN *v.* MONROE COUNTY *et al.*

[95 South. 727. No. 22517.]

1. ASSIGNMENTS. *First assignee giving notice to debtor has preference provided he has no notice of prior assignment.*

As between successive assignees of a debt, the assignee who first gives notice to the debtor has the preference, provided that at the time of taking the assignment he had no notice of a prior assignment.

2. HIGHWAYS. *County not authorized to withhold sum stipulated to be advanced under road contract to pay claims of laborers, materialmen, or subcontractors.*

Laborers, materialmen, and subcontractors have no lien against the state or any subdivision thereof for labor or material furnished on any public work, and where a contract for the construction of a public road provided that eighty-five per cent. of the engineer's monthly estimate of the value of the work done would be paid to the contractor as the work progressed, in the absence of a lien or contractual authority for so doing, the county had no right to withhold this monthly payment for the purpose of paying the claims of laborers, materialmen, or subcontractors.

3. ASSIGNMENTS. *Surety on contractor's bond held not entitled to prior lien on proceeds against bank financing contractor and taking subsequent assignment.*

Where a contract for the construction of a public road provided that eighty-five per cent. of the relative value of the work done would be paid to the contractor monthly as the work progressed, and in the application for a bond the surety on the contractor's bond took assignment of all the funds earned under the contract, but did not disclose this assignment until after the default of the contractor more than a year thereafter, and, relying on the provisions of the contract, and without notice of any prior assignment of, or claim of any character against, said fund, a bank took an assignment of the fund and gave immediate notice of such assignment by filing it with the clerk of the board of supervisors, and thereafter advanced the money necessary to enable the contractor to carry on the work, and collected each monthly payment for a period of twelve months, and where the surety had knowledge, or means of knowledge, of the fact that the contractor had assigned this fund to the bank, and that the bank was financing its principal and col-

lecting each month the earned percentage of eighty-five per cent., but it made no protest until after the contractor became insolvent and defaulted, and where, after default of the contractor, the surety had relet the balance of the work at a profit to itself, and when the county was under no obligation, either by law or contract, to withhold any part of the fund for the payment of laborers or materialmen, and was asserting no right to withhold the same for any purpose, *held,* that the surety had no superior equity in this fund over that of the bank which would entitle it to have the fund applied for its exoneration to the payment of the claims of furnishers of labor and material which accrued prior to the contractor's default.

APPEAL from chancery court of Monroe county.

HON. A. J. McINTYRE, Chancellor.

Proceeding between the First National Bank of Aberdeen and Monroe County and others. From the decree rendered, the former appeals. Reversed and remanded, with directions.

*Paine & Paine,* for appellant.

The law in this state has been clearly announced as to the rights of successive assignees to a debt, to-wit: that as between successive assignees he who first gives notice to the debtor will prevail although the other assignee may have been prior in time of getting the assignment. We will refer the court to the following authorities directly in point: *Lumber Co. v. Newcomb,* 79 Miss. 462; *Matthews v. Hamblin,* 28 Miss. 611; *Ex parte Est. Phillips,* 66 L. R. A. page, 700, note page 764; 2 R. C. L. page 628.

It makes no difference, therefore, whether the board of supervisors, in this case, accepted the assignment or notice of appellant or not. All that was necessary was that the board be given notice. See *Spengler v. Stiles-Tull Lumber Co.,* 94 Miss. 780. 5 Corpus Juris, page 937, letter J, and in cases in note 64.

It is not necessary that the notice to the board of supervisors be given by the appellant itself. It is sufficient

that notice of the assignment has been acquired by the board. See 5 Corpus Juris, page 935, div. 2. It has been held that the communication by which the notice is imparted may be merely casual and for no definite purpose and yet be sufficient notice. *Dale* v. *Kimpton,* 46 Vermont, 76.

And notice to one of a board of commissioners is a notice to the board. *Spring City Bank* v. *Rhea Co.,* Tenn. Ch. A., 59 S. W. 442; *Moody* v. *Kyle,* 34 Miss. 506.

All the equities in this case are with the appellant. It has the equity of being an innocent purchaser for value of the eighty-five per centum due under the contract without notice of any other assignment. By the appellants furnishing the contractor money to finance the work, the laborers and materialmen were paid up to this last month and thereby the liability of the surety company on its bond was lessened *pro tanto.* If appellant had not continued to finance the contractor under this assignment, the work would have stopped and the contract would have been breached many months before it was; the court can see by this use of appellant's money the liability of the surety company on the bond was largely decreased. In addition to these equities the appellant also has a legal title to the money paid into court. The surety company has nothing at most more than an equitable assignment, or the equity of subrogation. Therefore, under the maxim that where the equities are equal the legal title will prevail, the appellant should prevail and the money be awarded it. See 5th Corpus Juris, page 955.

But the court may hold that the assignment to the appellant was simply an equitable assignment. We reply to that, that in cases similar to the one at bar assignments to banks had been held to create an equity in the bank superior to the equity of subrogation of the surety company on the bonds of the contractors. See *American Surety Co.* v. *Bellingham National Bank,* 254 Fed. 54; *New Amsterdam Casualty Co.* v. *Wurtz* (Minn.), 77 N.

W. 664; *N. W. National Bank of Bellingham* v. *Guardian Casualty & Guaranty Co.* (Wash.), 167 Pac. 473.

By not filling their application containing the assignment and subrogation with the clerk of the board of supervisors, or by not having it recorded in some manner, in view of the fact that the public was given notice under the contract between Monroe county and the contractor that eighty-five per cent. of the monthly estimate was to be paid the contractor, which eighty-five per centum the surety company knew was the main line of credit of this contractor, the United States Fidelity & Guaranty company, is equitably estopped now to claim any part of the eighty-five per centum paid into court under the maxim that where one of two innocent parties must suffer a loss, it must be borne by that one whose conduct has rendered the injury possible. See 10 R. C. L. page 695, sec. 23; *Bowen* v. *Howenstein,* American Ann. Case 1913E., pages 1179 and 1181; *Brant* v. *Virginia Coal & Iron Co.,* 93 U. S. 326; 23 U. S. (L. Ed.), page 927.

The record does not disclose that the surety company has suffered any damages, but on the contrary it does appear that after the default by the contractor, the uncompleted part of the contract was let by the surety company at several thousand dollars profit. (2) The equity of subrogation will never be enforced when it will work injustice to those having equal equities. (3) A surety is not entitled to subrogation until it fully pays and discharges the obligation of its principal. These three propositions are elementary law, and it would be a needless consumption of the time of the court to do more than to cite a few authorities which hold that the doctrine of subrogation can never come into existence or be invoked by a surety unless the above first and third conditions exist, and that it will never be enforced if the second condition will result. See *U. S.* v. *National Surety Co.,* 41 Sup. Ct. 29; *Southern Trust Co.* v. *Garner,* 223 S. W. (Ark.) 369; *United States Fidelity & Guaranty Co.,* v. *National Bank & Trust Co.,* 229 Fed. (Tenn.) 448; *Weir-Booger Dry Goods Co.* v.

*Kelly,* 80 Miss. 64, 37 Cyc., pages 374-375, 25 R. C. L., page 1321; *New Amsterdam Co.* v. *City of Astoria,* 225 Fed. 560 (Ore.)

We now discuss the legal point upon which the court decided this case; a point not raised by appellee in any of their bills and amended bills, or in any of their answers, to-wit: That the contract between the surety company and Monroe county was indivisible, and having been breached by the contractor before its completion, none of the money for the work done prior to the breach was due to the contractor. That since it was not due the contractor there was nothing passing to the appellant under, the assignment. Therefore, the surety company, under its clause of subrogation, could have this money applied to the payment of the laborers and materialmen in exoneration of its liability to said laborers and materialmen. We submit that this holding of the court upon which he decided the case is clearly erroneous for two reasons: (1) The contract is not an entire contract, and (2) admitting for the sake of argument that it is an entire contract, yet the county waived this right and admitted it owed for the work done in November and paid it into court, and the surety company cannot avail itself of this right waived by the county. 13 Corpus Juris, page 562; 6 R. C. L., page 858, sec. 246; *Ganong* v. *Brown,* 88 Miss. 53.

We discuss under this section of our brief the claims of the materialmen and laborers, as opposed to the claim of the appellant. We say there are two reasons which clearly show that appellant is entitled to this money in preference to these claims.

An assignment of money due, or to become due, a contractor will prevail against the claims of laborers or materialmen. This has been the holding of our courts since the case of *Spengler et al.* v. *Stiles-Tull Lumber Co.,* 94 Miss. 780. The case was cited with approval by our court as recently as December, 1920, in the case of *Delta Lumber Co.* v. *Greenwood Bank & Trust Co.,* 86 So. 590. It

would be a waste of time to quote from the *Spengler case, supra.* The court is entirely familiar with it.

The public roads of the country are not subject to the lien created under section 2434, Hemingway's Code, in favor of laborers and subcontractors, and they acquired no lien on the balance in the hands of the county authorities to the credit of the principal contract of such roads by filing notice with the board or by filing answer, as was done in this suit. See *McGraw* v. *Board of Supervisors of Winston Co.,* 125 Miss. 420. This case is directly in point on this proposition.

The rights of subcontractors and materialmen in the case at bar is by an action at law against the surety company, as is provided by chapter 217 of the Laws of 1918. This law provides a remedy for subcontractors and materialmen against the surety on the bond of the contractor doing public work. Section 3 provides that when a contractor quits, or abandons the contract before its completion, suit may be instituted in the law courts by any laborer or materialman, and section 4 provides that only one suit shall be brought and all must join therein. In the record, it appears that under this law a suit had been filed by a materialman and subcontractor to-wit: Clifton Pitts, against the United States Fidelity and Guaranty Co., and that the case was pending, and is yet pending, and that proper legal notice had been given all laborers and materialmen to intervene in that proceeding. Therefore, the laborers and the materialmen had a plain, adequate and complete remedy at law against this surety company in that suit; and such remedy we submit is exclusive. They have no rights in this court in the case at bar, under the law cited, and as to them the appellant is clearly entitled to this money. Of course, that part of the last money tendered in court which was earned by the receiver, could not have passed by assignment to the appellant.

We, therefore, ask that the case be reversed and remanded and a judgment entered here for appellant for all that

part of the money paid into court, except the part earned by the receiver.

*Wilson, Gates & Armstrong,* for appellant.

The attorneys for Monroe county have filed a reply brief in which they take issue with appellant's claim that by paying the eighty-five per cent. of the November estimate into court, the county waived any defense it might have made on a suit for that money to the effect that the contractors could not recover it and therefore the contractors' assignee, conventional or equitable, could not recover it.

The county's brief is merely advisory, as it has no rights involved. Its bill of interpleader was recognized as such by bill of interpleader to have them contest the right to it. It forever waived any defense that it did not owe the money or could not be forced to pay it either because the contract was entire and incomplete, or because the work was progressing unsatisfactorily or by denial of the allowance of the estimate or for any other reason.

When it acknowledged that the estimate was made and allowed and paid it to the court to give it to the true owner, it, through and by its pleading and action, necessarily waived (very properly and sensibly) any defense it might have made to its paying the estimate. It was money earned by Prescott, of which eighty-five per cent. was under the contract estimated by the engineer, with the approval of the commissioner, allowed to be paid for this work by the county board, paid into court by the county to be paid to the true owner by the court, and all the claimants impleaded to contest for it, by the county, which necessarily retired from the fray. This proves itself.

It does not necessarily follow from this that the surety might not still be subrogated to the county's right to hold the fund to complete the work. On this it is frankly stated in the original brief that the authorities are divided. Fortunately, however, this money was not needed by the surety to complete the work, nor did the court give it for

that purpose.   No money was needed for that purpose, and the only possibility was a disputed claim for some amount for extra engineering and overhead expenses which could not seriously impair the reserved fifteen per cent.

So the court allowed the amount to the surety company to pay debts already incurred by Prescott to furnishers of labor and material.   It could well be under what it termed a majority rule that the guaranty company, on paying, might have been subrogated to the laborer's and furnisher's lien, if they had a lien, on or to the county's right to withhold the laborer's and furnisher's money from the contractor, if the county had a right by the contract to so withhold it.

Unfortunately for the guaranty company the furnishers of labor and material held no lien, to which it might be subrogated, and which the county should protect and the county had no right by contract (or law) to withhold the laborers' and furnishers' money for them and consequently no such right could go to the surety by subrogation.

Consequently it is of no avail to seek subrogation for the surety because: 1. Prescott had no right left against the bank to which it could be subrogated. 2. The laborers and furnishers had no lien to transmit to it by subrogation. 3. (a) The county obtained no lien by subrogation from the laborers and furnishers nor was it under duty to protect them or itself against their claims, nor (b) Did it have a contract or legal right to withhold funds for them and therefore had no rights, so far as furnisher's and laborer's claims are concerned, to transmit to the guaranty company by subrogation.

There was no right to deduct these moneys owning laborers and furnishers and consequently no subrogation to a right which did not exist.   Even if the county could have defeated a suit for the money, because of incompletion and the surety completes the contract and is subrogated, the county would have to pay Prescott and the surety for Prescott's and the surety's work, and none nor all of them could divert what Prescott earned from his

assignees to his laborers and furnishers without lien or contract reservation of funds.

*Wm. H. Hall,* for appellee.

A contract for a work to be completed as a whole is entire and individable. 6 R. C. L., p., 858, section 246; "According to some authorities, the criterion is to be found in the question whether the whole quantity, service or thing all as a whole is the essence of the contract." *Robinson* v. *Delong,* 118 Miss. 280.

The fact that a contract provides for payments from time to time, as the work progresses under the contract, will not in itself render the contract severable. 13 C. J. p. 565, sec. 530; 4 Elliott on Contracts, p. 835, sec. 3667.

Progress or partial payments are mere advances and in some circumstances may on that theory be recovered by the owner upon the contractor's failure to perform. *U. S.* v. *U. S. Fidelity & Guaranty Co.,* 236 U. S. 512 (524-525); 59 L. Ed. 696 (702). Contractors being insolvent and unable to go on cannot recover on the contract. *Wooten* v. *Reed,* 2 S. & M. 585; *Robinson* v. *DeLong,* 118 Miss. 280; *Timberlake* v. *Thayer,* 71 Miss. 279; *Leek Milling Co.* v. *Langford,* 81 Miss. 728.

Contractors cannot recover *quantum meruit* for partial performance under an entire contract because of benefits received by the owner where the owner cannot avoid availing himself of those benefits. *Robinson* v. *DeLong,* 118 Miss. 280.

And in a case where the contractor can recover, the recovery must be reduced by the damage sustained by the owner for his failure to fully perform. 9 C. J., p. 820, section 157.

Suspension and receivership is an abandonment both in law and fact. *Aetna Indem. Co.* v. *Geo. A. Fuller,* 111 Md. 321, 73 Atl. 738 (745); See, also, *City of Bristol* v. *Bostwick,* 139 Tenn. 304 (314). Insolvency does not so justify abandonment as to entitle the contractor to a *quan-*

*tum meruit recovery, Newhall* v. *Clark,* 3 Cushing, 376, 50 Am. Dec. 741.

Nothing short of a breach of the contract on the part of the owner will so justify the contractor's abandonment as to entitle him to recover on a contract that he has not performed. *Robinson* v. *DeLong,* 118 Miss. 280; *Newhall* v. *Clark,* 3 Cush. 376; 50 Am. Dec. 741. ·

A contractor's assignment of moneys to become due under his contract is subject to the terms and conditions of the contract under which they were to be earned and become due, and the owner's acceptance of such an order is conditional and the assignee acquires no greater rights than the contractor had. *Newhall* v. *Clark,* 3 Cushing, 386, 50 Am. Dec. 741.

The editor of American Decisions says in a footnote, after his report of above case: "The principal case is cited with approval in *Somers* v. *Thayer,* 115 Mass. 164 and *Grundy* v. *Kittredge,* 8 Cush. 585, on acceptances of similar orders being conditional." *McConnell* v. *Howes,* 50 W. Va. 33, 40 S. E. 436; *Alfalfa Lumber Co.* v. *Alturas School Dist.,* 24 Cal. A. 426, 141 Pac. 835; *Wheelock* v. *Hull,* 124 Iowa, 752, 100 N. W. 863; 5 C. J., p. 962, section 150.

The surety on the contractor's bond, in event of the contractor's default, especially when requested and authorized so to do by the owner, has the right to step in and finish the work and does so as surety, not on behalf of its principal, and the contractor's assignee of payments to become due, is charged with notice of that right of the surety's especially when the bond is made part of the contract, and of the surety's right of subrogation to the rights of the owner. *Derby* v. *U. S. Fidelity & Guaranty Co.* (Or.), 169 Pac. 500; *First National Bank* v. *School Dist.,* 77 Mich. 570, 110 N. W. 347.

The surety may set up the contractor's failure to perform in opposition to the assignee's claim to the fund just as the county could. That was the principle underlying the decision on one claim in *U. S. Fidelity & Guaranty*

*Company* v. *First State Bank,* 116 Miss. 229. The contention was made on behalf of Cole that the county not having questioned the authority of its agent to accept something, other than cash in payment for its bonds being delivered by the agent, the guaranty company, surety on the depository bond, could not, especially as it had not settled with the county when it filed its bill, and the answer was that the county being under the necessity to subrogate the surety to its rights, the surety was entitled to do so to preserve that right for its protection (see briefs of counsel, pp. 248 and 259) and the court by its decision in the surety's favor accepted that contention as correct.

That but follows the familiar principles that the obligee may not release or misapply and must exercise proper care to preserve security that the surety would be subrogated to in due course. 21 R. C. L. p. 1053, sec. 98, and p. 1058, sec. 102. The surety's right to the balance of the contract price· has been held to be superior to the rights of the contractor's assignee. *Prairie State National Bank* v. *U. S.,* 41 L. Ed. 412; *First National Bank* v. *City Trust Safety Deposit & Surety Co.* (C. C. A.), 114 Fed. 529; *Henningsen* v. *U. S. Fidelity & Guaranty Co.,* 208 U. S. 404, 52 L. Ed. 547; *Hardway* v. *National Surety Co.,* 211 U. S. 552, 53 L. Ed. 321; *Title Guaranty & Surety Co.* v. *Dutcher,* 203 Fed. 167; *Derby* v. *U. S. Fidelity & Guaranty Co.,* (Or.), 169 Pac. 500.

The supreme court of Mississippi in *U. S. Fidelity & Guaranty Company* v. *Marathon Lumber Co.,* 119 Miss. 802, in effect held that the surety on a builder's bond is entitled to the balance of the contract price as against everybody except furnishers of labor and material to whom it is liable.

Appellant contends that the surety was not entitled to the fund because it had not paid furnishers. Appellant having no right to the fund, could have no 'concern with that question; the county alone was concerned with that question and had the right to raise it if it could be done at all, and it did not do so. But however that may be, this

court in *United States Fidelity & Guaranty Company* v. *First State Bank, ante,* answered a similar contention. in favor of the surety. In *Town of Gastonia* v. *McEntee-Peterson Eng. Co.,* 125 N. C. 350, 42 S. E. 857, the supreme court of North Carolina suggested that the surety on the same principle was entitled to have the fund applied to the payment of claims, for which it was liable. Equity is the court alone in which that could be done, being the court which does complete justice among all of the parties in one decree. In the cases *Dowling* v. *Seattle,* 22 Wash. 592, 61 Pac. 709; *Title Guaranty & Surety Company* v. *First National Bank,* 162 Pac. 23, and *New Amsterdam Casualty Company* v. *Wurtz,* 177 N. W. 664, and some of the other cases relied on by counsel for appellant, the proceeding was by the surety to have the funds in the hands of the owner or paid into court, applied to 'the payment of the claims of laborers and materialmen to whom the surety was liable, and the propriety of such a proceeding seems to have been recognized, and, therefore, not questioned. The principle is simply that of exoneration which a surety has the right to invoke. 32 Cyc. 234.

Appellant's contention that its rights were not being cut off because the surety was performing the contract estops it from contesting the surety's right to exoneration from liability to the furnishers, because that would be to claim the benefits of the contract without the burdens thereof. 21 C. J., p. 1209, sec. 210.

Cook, J., delivered the opinion of the court.

On October 28, 1919, Monroe county entered into a contract with O. A. Prescott & Co. for the construction of a gravel road in the Third supervisor's district of the county, the same being a federal-aid road. The contract was in the form prescribed by the Mississippi highway department, and in the proposal submitted to the contractor the various items and pieces of work to be done were separately stated, and unit prices were bid on each item, and the contract provided:

"The Third district of Monroe county hereby agrees to pay and the contractor hereby agrees to accept the prices given in the proposal, hereto attached in full compensation for furnishing materials and executing all the work contemplated in this contract; also for all loss or damage arising out of the nature of the work aforesaid or from the action of the elements, and unforeseen obstructions or difficulties which may be encountered in the prosecution of the same and for all risks of every description connected with the work for faithfully completing the whole work in good and workmanlike manner according to the approved plans, specifications, and requirements of the state highway engineer."

In the specifications made a part of the contract, under the heading "Scope of Payments," there is the following provision:

"Payment for each kind of work will be made on the basis specified for that particular item, and at the rate mentioned in the proposal. The amount computed on this basis and rate shall be payment in full for the work done, including all claims of every character. No payments, however, shall constitute an acceptance of the work.

"Partial payments will be made monthly, provided that the work is progressing to the satisfaction of the engineer. The total amount of such payments at any time before final completion shall not exceed eighty-five per centum of the relative value of the work done, as estimated by the engineer. Estimates of the relative value of the work performed will be made by the engineer on or near the last day of the month in which work was done, and payment therefor will be made about the 10th of the succeeding month.

"Whenever the total amount of work provided for by the contract shall have been completely performed on the part of the contractor, and all parts of the work have been approved by the engineer, a final estimate showing the value of the work will be prepared by the engineer as soon as the necessary measurements can be made. The amount

of this estimate, less any sums that may have been deducted in accordance with the provisions of the contract, will be paid to the contractor within thirty (30) days after the final estimate is forwarded by the engineer, provided that the contractor has properly maintained the road as hereinafter specified."

The contract also provided as follows:

"The contractor will be required to maintain the road in first-class condition for thirty days after it is completed, and fifteen (15) per cent. of the final estimate will be retained by the county or district to enforce this requirement, except that the state highway engineer may, in his discretion, release the contractor from the further maintenance of sections of the road, not less than two miles in length, which have been satisfactorily maintained under traffic for at least thirty days."

The contractor executed a bond, with the United States Fidelity & Guaranty Company as surety, conditioned for the faithful performance of each and every condition, stipulation, and requirement of the specifications and contract, and to indemnify and save harmless the county from any and all damages, either directly or indirectly, arising out of any failure to perform the same, and also to pay the agents, servants, and employees, and all persons furnishing said contractor with material or labor in the course of the performance of the work. The application for bond executed by the contractor to the surety company contained the following assignment:

"That the said company, as surety on said bond, as of this date, shall be subrogated to all our rights, privileges, and properties as principal and otherwise in said contract, and said principal does hereby assign, transfer, and convey to said company all the deferred payments and retained percentages, and any and all moneys and properties that may be due and payable to said principal at the time of such breach or default, or that may thereafter become due and payable to said principal on account of said contract, or on account of extra work or materials supplied

in connection therewith, hereby agreeing that all such moneys and the proceeds of such payments and properties shall be the sole property of the said company, and to be by it credited upon any loss, damage, charge, and expense sustained or incurred by it as above set forth under its bond of suretyship."

After the execution of the contract for the construction of the road, the contractor made arrangements with the First National Bank of Aberdeen, appellant, to finance the work of construction, and to secure the money advanced and to be advanced by appellant, the contractor executed promissory notes endorsed by Sel M. Jones, a member of the contracting firm, and also executed an assignment in the words following:

Nov. 24th, 1919.

"To the Board of Supervisors, Monroe County: For value received we hereby assign to the First National Bank of Aberdeen, Miss., all moneys due or to become due for road-work in the Third district, Monroe county, and hereby direct you to pay to said bank when and as they become due.

O. A. PRESCOTT & CO.

"By E. C. CORRELL."

On the same day that this assignment was executed it was filed with the chancery clerk and *ex officio* clerk of the board of supervisors of Monroe county, and it has since remained on file with the papers pertaining to said road district, and for the succeeding twelve months all warrants for the monthly estimates of work done were delivered to the appellant. On December 6, 1920, the district road commissioners certified the engineer's estimate of the work done during November to the board of supervisors, eighty-five per cent. of the amount due the contractor for work done during November being fourteen thousand five hundred sixty dollars and eighty-three cents, and on the same day the appellant demanded this sum from the board, but it was not paid on account of the fact that there were not sufficient funds on hand to pay it. In the following day

J. L. Shell was appointed receiver of the firm of O. A. Prescott & Co., contractor, and immediately thereafter the guaranty company and the receiver filed with the board of supervisors notice of claims against the funds due the contractor. The county then rejected the claim of the bank, and on the 10th day of December, 1920, the bank filed suit on its claim in the circuit court. On the same day the county filed a bill of interpleader against the appellant, the First National Bank of Aberdeen, the United States Fidelity and Guaranty Company, surety on the contractor's bond and J. L. Shell, receiver.

The bill of interpleader set out in detail the facts in regard to the execution of the contract and bond, and averred that the road was about half completed; that the contractor had performed work of the estimated value of about sixty-one thousand eight hundred seventy-three dollars and ninety-nine cents, of which fifteen per cent., or nine thousand two hundred eighty-one dollars and ten cents, was retained by the county under the contract until complete performance and acceptance, and that there was then due the contractor by the county fourteen thousand five hundred sixty dollars and eighty-three cents for work done during the month of November, 1920. The bill then averred that J. L. Shell, receiver, represented to complainant that numerous laborers and sub-contractors were claiming a prior right of payment out of the funds due the contractor for work done and material furnished in the construction of the road. The bill further averred that the defendant First National Bank had filed a claim with the board of supervisors for the entire amount of the payment then due, claiming the funds under an assignment, and had demanded of complainant the issuance of a warrant for the full sum of the estimate then due; that complainant was advised that the contractor was insolvent and unable to procure other credit or advances for the prosecution of the work; that it had notified the guaranty company of the cessation of the work, and it was then the privilege of the guaranty company to continue the construction of the road

for its principal; that the guaranty company had also claimed the funds under an assignment thereof; that the guaranty company had demanded that complainant pay said funds to it for its protection, and in accordance with its indemnity and agreement with the contractor, and that it claimed that said fund was equitably and by contract the property of said surety, since the exigency had arisen which rendered the contractor unable to complete the work. The bill then averred that complainant recognized that it owed to the contractor or some of the claimants the said sum of fourteen thousand five hundred sixty dollars and eighty-three cents; that the complainant disclaimed all interest in said sum in its public capacity further than its duty as holder thereof to carry out and maintain the integrity of the contract between the county and the contractor and to preserve the suretyship of the guaranty company for the full performance of the contract; that it was unwilling to do anything that would jeopardize the performance of the contract and the speedy construction of the road; that it was in doubt as to who was entitled to said fund of fourteen thousand five hundred sixty dollars and eighty-three cents, the amount of the engineer's estimate of the sum due; that it was unwilling to pay the same to either of said claimants without all of them having an opportunity to assert their rights thereto, and without an order of the court directing such payment, and it then tendered into court its warrant for said sum, and prayed for an order adjudicating and settling the equities between the several claimants of the funds.

Thereafter the complainant, Monroe county, filed a supplemental bill of interpleader averring that since the filing of the original bill an additional estimate of one thousand three hundred fifty-nine dollars and thirty-six cents had been made by the engineer of the road project; that some portion of the work covered by this last estimate had been done by the receiver, but the complainant was unable to determine the exact amount; that complainant was indifferent as to who should receive the sum, but was in

great doubt as to who was entitled thereto, and it likewise paid this sum into court to be disposed of under the directions of the court.

The appellant, First National Bank, answered the bill of interpleader and made its answer a cross-bill and claimed the funds by virtue of its assignment. It set up that the contractor made arrangements with the bank to advance the money from time to time to be used in paying for labor and material used in the work, to be secured by an assignment of all money due and to become due from the county thereon; that the contractor executed the assignment which is hereinbefore set out in full; that, when this assignment was filed with the clerk of the board of supervisors, the bank had no notice of the purported assignment to the guaranty company; that it relied on the provisions of the contract and the assignment, and at various times furnished to the contractor money which was used by them in paying for labor and material used in the performance of the work; that the assignment was recognized and accepted by the county, and that all the monthly estimates for the succeeding twelve months were paid by the county to the bank; that under the contract eighty-five per cent. of the engineer's estimate of the work done was to be paid to the contractor each month, and fifteen per cent. was to be retained by the county until thirty days after the completion of the work; that, in addition to the amounts paid into court, there was a sum of more than nine thousand two hundred and eighty dollars earned by the contractor and retained by the county under its contract to secure complete performance, and the contractor then owed the bank twenty thousand eight hundred eighty-five dollars, with interest.

The answer further averred that, if any assignment had been executed and delivered to the guaranty company, it had been secretly withheld from the public and was not superior to the bank's assignment; that the guaranty company had sublet the work at a profit of several thousand dollars to the guaranty company, and this profit, together

with the amount of retained percentages of the work done by the contractors, will exceed the amount of all claims of laborers and materialmen for which the said guaranty company may be liable; that it had long been the custom and usage in the city of Aberdeen and throughout the state of Mississippi for road contractors to finance their work by borrowing from banks upon an assignment of the moneys to become due under their road contract; that this custom, as well as the loans, assignment, and payments by the board of supervisors thereunder to the defendant bank, were well known to the guaranty company; that said guaranty company, by entering into a contract authorizing the payment to the contractor of eighty-five per cent. monthly, with no provision therein for withholding or forfeiting said funds under any circumstances, and by not seasonably asserting or making known any alleged claim thereto, had waived the same, if any it had, and was estopped from asserting it in opposition to the bank, the legal assignee of said funds, whose money had been used towards completion of the contract for the benefit of the surety and to lessen the claim and amounts for which the guaranty company would otherwise have been liable.

The answer denied that the receiver, J. L. Shell, was entitled to any of the unpaid amount earned by the contractor, for the reason that such amount had been duly assigned to the bank for a valuable consideration without notice of any prior or existing equity more than one year before the appointment of the receiver. It denied that the petitioning or intervening laborers and materialmen had any lien upon or rights in said fund paid into court, and alleged that chapter 217, Laws of 1918, required the contractor to furnish the usual surety company bond with the additional obligation that such contractor should promptly make payment to all persons supplying labor or material for the work and giving such persons the right to intervene and be made parties to any action instituted on such bond, and to have their rights adjudicated in such action and judgment rendered thereon; that, as provided by

said statute, a suit had been instituted on said bond and proper notice published requiring all such parties having claims for labor or material to intervene and propound such claims, and that the remedy provided by this statute was exclusive. The answer of the bank further denied the equity and liens or legal claims of the guaranty company and of the laborers to the funds, and prayed that both funds, less such part of the smaller fund as had been earned by the receiver, should be decreed to it.

The guaranty company answered and claimed both funds. It admitted the principal allegations of fact in the original bill, but averred the conclusion that the assignment to the bank was not valid and binding, and that in any event the bank's claim was subordinate to its assignment and rights. It set up that, in making the application for the bond which it executed, there was an indemnity agreement which assigned to it this fund and all other property of the contractor, that it had been called on to take over the contract to complete the work, and that it was having the work and contract completed. It made no claim that it would lose any money in doing this work, but asserted its right to have these funds applied for its indemnity against all claims of subcontractors and furnishers of labor and material, and all other losses, costs, and expenses it had suffered or incurred; the averment being as follows:

"Wherefore your respondent avers that it is entitled to said sum of fourteen thousand five hundred sixty dollars and eighty-three cents as against defendant First National Bank for its indemnity against all claims of subcontractors and furnishers of labor and material, and all other loss, cost, and expense that it has suffered or incurred, and to have the same applied for its exoneration and relief to the claims of all sub-contractors and furnishers of labor and material to whom it may be liable under its bond, who intervene and establish such claims against it in this cause, and that as against J. L. Shell, receiver, it is entitled to such part of said sum of one thousand three hundred fifty-

nine dollars and thirty-six cents as may have been earned by said O. A. Prescott & Co., and not by said receiver.

"Wherefore, premises considered, your respondent prays that issues may be made up between said First National Bank and J. L. Shell and itself, and between furnishers of labor and material intervening herein and itself, as to its liability for the particular claims of each and the amount thereof, and that said funds be paid to it as aforesaid, or be applied for its exoneration as aforesaid, and that respondent have such other and general relief as the premises may warrant and as to the court may seem proper and meet."

The receiver, J. L. Shell, also filed an answer, propounding a claim to the funds on behalf of the creditors of O. A. Prescott & Co., contractor.

The cause was submitted to the chancellor on the pleadings, an agreed statement of facts and oral and documentary proof, and a decree holding that the contract was entire and indivisible, and had been breached by the contractor, and that the county was obligated to the guaranty company to retain the unpaid estimates and retained percentages because of its suretyship and obligations to pay claims for labor and material furnished for the prosecution of the work, and that said guaranty company was entitled to have the funds representing the unpaid estimates for work done by the contractor applied for its exoneration to the payment of the claims of furnishers of labor and material coming within the terms of the bond guaranteeing the performance of the contract, and that the First National Bank was entitled to take under its assignment only such surplus as may be left after discharging such claims and the completion of the work. From this decree the First National Bank prosecuted this appeal.

There are no disputed facts in this record. It is stipulated in an agreement that the assignment executed to the appellant on the 24th day of November, 1919, is valid. It is established by uncontradicted evidence that appellant gave notice of its assignment by immediately filing it

with the clerk of the board of supervisors; that this as-signment was recognized and acted on for one year, and during that time all monthly payments were made to the appellant; that for more than twelve months after the ex-ecution of this assignment appellant had no notice, actual or constructive, that the guaranty company had or claimed an assignment of the money due and to become due under the contract. The president of the bank testified, without contradiction, that the bank furnished to the contractor all the money used in paying for the labor and material used in the work, except the sum of five hundred dollars. It was further agreed that, after the default of the con-tractor, the guaranty company had sublet the balance of the work at a profit to it of two thousand five hundred, less some charges for extra engineering fees. All the material allegations of fact contained in the various pleadings were established by admissions or uncontroverted proof, and the further facts material to a decision of the questions involved are sufficiently stated in the analysis of the plead-ings herein given.

In the answer filed by the appellee guaranty company a claim was asserted to the funds in controversy under and by virtue of an assignment in the indemnity agreement contained in the application for the bond executed by it, but it is not clear from the brief of counsel that such con-tention is now made. In any event such contention cannot prevail here, since it is settled by numerous decisions in this state that, as between successive assignees of a debt, the rule is that the assignment which is first brought to the notice of the debtor has priority, provided the assignee had no notice of a prior assignment. *Mathews* v. *Hamblin*, 28 Miss. 611, and *Lumber Co.* v. *Newcomb,* 79 Miss. 462, 30 So. 608. In the *Newcomb Case, supra.* Chief Justice WHITFIELD, for the court said:

"Where there is a debtor of the assignor, and the as-signor has made two assignments of the debt, that assignee takes who first notifies the debtor, provided he had no notice of a prior assignment. In *Perkins* v. *Butler Co.*

131 Miss.—54

(1895), in 2 Am. & Eng. Dec. Eq. (a precisely similar case), at page 212, 2 Am. & Eng. Dec. Eq., and page 310, 62 N. W. Rep., the rule is thus stated: 'In determining priorities between different assignments of this character, the general rule is that that assignment which is first brought to the notice of the debtor has priority.' See, also, 2 Am. & Eng. Dec. Eq. 219; 44 Neb. 110, 62 N. W. Rep. 308. And in 2 Am. & Eng. Enc. L. (2d Ed.) 1077, it is said: 'It is a well-established rule in England that, as between successive assignees of a chose in action, he will have the preference who first gives notice to the debtor, even if he be a subsequent assignee, provided that at the time of taking it he had no notice of the prior assignment. In this country the authorities are greatly at variance on this question. In the federal courts and in many of the state courts the English rule has been adopted.' We follow the English rule, which is that also of the United States supreme court."

The appellee guaranty company, in support of the chancellor's decree, contends that "the assignment from the contractor to the bank was conditioned upon the contractor fully performing the contract and becoming entitled to the moneys therein by the county agreed to be paid, and that the money which the bank claims under the assignment did not become due under the terms of the contract because of the contractor's insolvency, inability to go on, and discontinuance of the work, and that the rights of the guaranty company thereupon intervened and superseded and deferred, if they did not cut off altogether, the rights of the bank under its assignment," or, in other words, that the guaranty company was subrogated to all the rights of the county under the contract, and that in this case the guaranty company is entitled to have the money earned before the default of the contractor withheld and applied in exoneration of its liability for labor performed and material furnished prior to the default of the contractor.

In considering this question and determining the right of the county to withhold for the benefit of laborers, ma-

terialmen, or sub-contractors any part of the eighty-five per cent. which the contract provided should be paid to the contractor, it is important to first determine its duty or obligation in this regard. The contract contained no provision whatever that imposed any obligation on the county to guarantee or pay the claims of furnishers of labor or material, or which gave it or its agents the right to withhold any money for that purpose. The contract provided that the county might reserve fifteen per cent. to guarantee the completion of the road and the maintenance thereof for thirty days after its completion, and specifically provided for the payment of the remaining eighty-five per cent. to the contractor.

It is settled beyond controversy in this state that laborers, materialmen, and sub-contractors have no lien against the state or a county or public body for labor or material furnished on any public work. *Panola County* v. *Gillen,* 59 Miss. 198; *National Surety Co.* v. *Hall-Miller Decorating Co.,* 104 Miss. 626, 61 So. 700, 46 L. R. A. (N. S.) 325; *U. S. F. & G. Co.* v. *Marathon Lumber Co.,* 119 Miss. 802, 81 So. 492; *McGraw* v. *Board of Supervisors,* 125 Miss. 420, 87 So. 897.

In *National Surety Co.* v. *Hall-Miller Decorating Co., supra,* this court said: "It must be borne in mind that the mechanics, materialmen, and laborers could have no lien upon the building, and that the trustees, representing the state, would not be bound to reserve money with which to pay their claims; but they would have to depend upon the contractor alone."

In *U. S. F. & G. Co.* v. *Marathon Lumber Co., supra,* it is said: "The owner of the building in this case being the state, no lien for labor and material furnished attached to the building, and therefore the funds in the hands of the state agents and board of trustees cannot be applied to the payment of the labor and material claims unless authority for doing so is found in the contract executed by the contractor or in the bond furnished by the appellant bonding company."

In *McGraw* v. *Board of Supervisors, supra,* it is again said: "The public roads and property of a county are not subject to the lien created under section 3074, Code of 1906 (Hemingway's Code, section 2434), in favor of laborers and subcontractors, and by filing a notice with the board of supervisors claiming a lien the subcontractors acquired no lien on the funds in the hands of the county authorities."

It has been frequently held in this state that under Code 1906, section 3074 (Hemingway's Code, section 2434), giving to subcontractors, materialmen, and laborers a lien on the amount due by the owner to the contractor upon their giving notice to the owner, one holding a valid assignment from the principal contractor has the prior right to the fund as against the subcontractors, materialmen, and laborers serving notice after assignment. *Spengler* v. *Lumber Co.,* 94 Miss. 780, 48 So. 966, 19 Ann. Cas. 426; *Strickland Lumber Co.* v. *Rheinhart,* 115 Miss. 749, 76 So. 643; *Delta Lumber Co.* v. *Trust Co.,* 123 Miss. 772, 86 So. 590. In recognition of this fact, as well as the fact that laborers, materialmen, and subcontractors can acquire no lien against the state or any subdivision thereof for labor or material furnished on any public work, the legislature enacted chapter 217, Laws of 1918, which provides that any person entering into a formal contract with the state, or any county thereof, or any political subdivision therein, for constructing any building, or doing any public work, shall execute the usual bond, with the additional obligation that such contractor shall promptly make payment to all persons supplying labor or materials therefor. The guaranty company here assumed this additional obligation, and this bond constitutes the only security which the laborers and materialmen have for their claims, and, in the absence of a lien or contractual authority for so doing, the county had no right to withhold the eighty-five per cent. monthly payment provided for by the contract merely to pay laborers or materialmen.

It is contended, however, by the guaranty company, that the county had the right to withhold this fund, as well as the retained percentage of fifteen per cent., to provide for and guarantee performance of the contract, and that performance of the contract includes prompt payment of furnishers of labor and material as well as a faithfully completed road, and that, since the guaranty company was liable for the payment of the claims of the laborers and materialmen, it is subrogated to this right of the county, and has equities superior to those of the bank which entitled it to have such fund applied in exoneration of its liability to the furnishers of labor and material. Since the county was under no obligation, either by law or contract, to the furnishers of labor or material, it is not clear that, in so far as the rights of the county are concerned, performance of the contract included the payment of these claims. If it be conceded, however, that such is true, we do not think this contention can prevail under the facts here.

The county is asserting no right to withhold this fund for any purpose, and, since the guaranty company has relet the balance of the work under the contract at a considerable profit to itself, it is conceded that it is unnecessary for it to withhold this fund in order to secure a faithfully completed road or to protect the surety against any loss in completing the work. The contract provided a fund to be retained by the county until the completion and acceptance of the road, and expressly provided that the remainder, eighty-five per cent. of the money earned, should be paid to the contractor as the work progressed. The contractor had a perfect right to collect this fund or effectually assign it at any time before default and notice of such default to the county. The guaranty company assumed its obligation with full knowledge of the fact that the contract provided that this eighty-five per cent. fund should be paid monthly to the contractor, and that it might be, and probably would be, assigned as a basis of credit to finance the construction of the road. With this knowledge it assumed the obligation and took a secret as-

signment of all the funds earned under the contract and did not disclose this assignment until after the default of the contract more than one year thereafter. Without a provision in the contract for the payment as the work progressed of a percentage of the money earned, and the right to assign this fund, it would usually be impossible for the ordinary contractor to finance a large contract by obtaining credit with a bank on the strength of its performance. Relying upon this provision of the contract, and without notice of any prior assignment or claim of any character, the bank took its assignment of the fund, and advanced the money necessary to enable the contractor to carry on the work at a time when the contractor appeared to have full right to collect or effectively assign this fund. The bank gave public notice of its assignment by filing it with the clerk of the board of supervisors, and thereafter collected the monthly payments for a period of twelve months. During this period of one year the guaranty company knew that this fund was the main line of credit upon which the contractor could secure money with which to finance the work under the contract, and it had knowledge, or means of knowledge, of the fact that the contractor had assigned this fund to the bank, and that the bank was financing the operations of its principal, and collecting each month the earned percentage of eighty-five per cent.

The evidence is undisputed that the bank furnished all the money that was used by the contractor in constructing the road, except a very small sum, and during all this period of twelve months the guaranty company stood by without protest, permitting the bank to finance the work of the contractor so long as the contractor was solvent, and it was to its advantage by reason of the fact that its obligation under the bond was being discharged, with money advanced by the bank, and only when the contractor became insolvent and defaulted did it assert its assignment or any claim to the fund. Under these circumstances we do not think the guaranty company has a superior equity in this fund over that of the bank which would entitle it to have

the fund applied for its exoneration to the payment of the claims of furnishers of labor and material which accrued prior to the contractor's default, and since, in the absence of a lien in their favor or contractual right for so doing, the county had no right to withhold this fund for the payment of the claims of such laborers, materialmen, or subcontractors, we think the bank was entitled to recover all of the funds paid into court by the county, except such portion as may have been earned by the receiver.

Upon the question of whether a surety's equity of subrogation is superior to the rights of an assignee who has advanced money to a contractor to pay for the labor and material used in the work to be performed under a contract, the authorities are conflicting, but many of the cases holding that the equity of the surety is superior involved contests over the retained percentages only, or were controlled by the provisions of the contract involved, or are distinguishable on the facts when compared with the facts in the case at bar. The retained percentages are not here involved, and as to that feature we express no opinion, but, as to the amount which the contract provided should be paid to the contractor monthly, we think the doctrine herein announced is in nearer accord with reason and sound policy, and it finds support in the cases of *American Surety Co.* v. *Bellingham Nat. Bank,* 254 Fed. 55, 165 C. C. A. 464; *Dowling* v. *Seattle,* 22 Wash. 592, 61 Pac. 709; *Northwestern Nat. Bank* v. *Guardian C. & G. Co.,* 93 Wash. 635, 161 Pac. 473, Ann. Cas. 1918D, 644; *Title Guaranty Co.* v. *First Nat. Bank,* 94 Wash. 55, 162 Pac. 23; and *New Amsterdam Casualty Co.* v. *Wurtz,* 145 Minn. 438, 177 N. W. 664. In *Northwestern Nat. Bank* v. *Guardian Casualty Co., supra,* the Washington court said:

"This is a distinct holding that it is only where there is a clear and express reservation in the contract of a fund to be held up for the benefit of laborers and materialmen that there is any fund the contractor may not effectually assign by an assignment made prior to his default and notice of such default to the board or, as in this case, to the

city, and that it is only as to such reserve fund that the labor and material claims have any priority over such assignments, hence only as to such reserve fund that there is any right of subrogation in favor of the bondsmen. , . .

"In the case before us the bank had taken assignments of all moneys to become due to the contractors as security for the notes, on which there remains a balance due of two thousand three hundred dollars. These assignments were taken and filed with the city comptroller prior to any notice to any one that the labor and material claims had not been paid or would not be paid. The contract itself contained no provision for an absolute reserve of any percentage as security for labor and material claims. It contained nothing but a provision permitting the city to withhold payment until satisfied that all labor and material claims had been paid. Nothing, however, had been held up by the city at the time the assignments were made. It follows that, under the rule in the Dowling case, the contractors' assignments to the bank must be treated as a valid appropriation of the fund which was afterwards paid into court to the payment of the bank's notes, including this balance of two thousand three hundred dollars, prior and superior to any right of laborers or materialmen, hence superior to any right of subrogation in the surety. As said in the Dowling case, 'these assignments, being valid when made and assented to by the city, were not invalidated by the subsequent default' of the contractor. Any other view would make it impossible for the ordinary contractor to finance a large contract by obtaining credit with a bank on the strength of its performance.

"We find no merit in the claim that the bonding company has a superior equity in this fund over that of the bank. It has no equity in the fund as against the bank, which paid its money on the strength of assignments of the fund at a time when the contractors had full right to collect and dispose of the fund as they saw fit."

It follows that the decree of the court below must be reversed, and, since the portion of the December estimate which was earned by the receiver does not appear in the record, the cause will be remanded for the ascertainment of that fact, and for decree in accord with the views herein expressed.

*Reversed and remanded.*