JEFFERSON DAVIS COUNTY *v.* BERRY, SHERIFF, *et al.*[*]

(Division B.    Feb. 18, 1929.)

[120 So. 572.    No. 27716.]

*Corpus Juris-Cyc. References: Attorney-general, 6CJ, section 9, p. 808, n. 41; Officers, 46CJ, section 249, p. 1019, n. 87.

*Livingston & Milloy,* for appellant.

*E. C. Sharp,* for appellee.

GRIFFITH, J. The original bill in this case was filed by the county of Jefferson Davis, on March 10, 1927, against Rush H. Knox, attorney-general, and R. R. Berry, tax collector of said county, and the Bank of Blountville, the county depository, upon which bill an injunction was issued and served. On April 25, 1927, an answer was filed by the attorney-general, and also at the same time

a general demurrer, as is allowed by our reformed chancery practice statutes. On April 29, 1927, an amended bill was filed, to which on June 10, 1927, the attorney-general filed a general demurrer and on June 14, 1927, an answer. The attorney-general, on April 25, 1927, had moved to dissolve the injunction on "original bill, demurrer, answer and testimony in open court," but it appears that nothing was done with this motion until the June, 1927, term of court, when an order was made taking the case under advisement, the order reciting that the cause had come on "for hearing upon the motion to dissolve the injunction upon bill and demurrer." Decree was not rendered by the chancellor until October 31, 1928, and this decree also recites that it was made "on the bill and amended bill and demurrer to the same."

It is clear, therefore, that the hearing of the motion to dissolve was solely upon bill and demurrer, and so much is above stated in that regard because a considerable portion of the briefs of both sides now presented to us contain arguments based upon the allegations of the answer, and in fact one of the briefs goes beyond the allegations of the bills and answers and deals with asserted facts that do not appear in the record at all.

Although our practice allows a demurrer and answer to be filed at the same time, or even in the same pleading, nevertheless it yet remains true that, when a case is heard on bill and demurrer, no part of the answer can be looked to as regards any fact or facts alleged in the answer. "The challenge of a demurrer can be interposed only for defects and insufficiencies apparent on the face of the bill itself; no question of fact other than as appears in the bill itself can be raised by demurrer, . . . and if a demurrer seeks to allege any fact or otherwise to import anything of fact into the question not shown on the face of the bill it is a 'speaking demurrer' and will be overruled. Not only so, but moreover, a demurrant can-

not aid himself . . . by any answer filed. . . . Upon the presentation of a demurrer the bill alone must be looked to for the facts, excepting only the facts which the court may judicially know." Miss. Chancery Prac., section 289.

Confining ourselves, therefore, to the case made by the bill and amended bill, it appears: That on December 27, 1923, the then attorney-general, acting under chapter 120, Laws 1918 (section 61, Hemingway's 1927 Code), filed appeals from the assessments of five of the large owners of lands in said county, and that on January 12, 1926, the defendant attorney-general filed appeals from the assessments of five such owners, four of whom were the same as those concerned in the appeals of 1923. That only one of the appeals from the 1923-24 assessments was ever tried, and this trial resulted adversely to the attorney-general, from which an appeal was taken by him to the supreme court. It is stated by the bill that the case "was never heard or considered by the supreme court," from which it is to be inferred that this appeal was disposed of along with the other cases in the compromise settlement hereinafter to be mentioned. That on December 7, 1926, an appeal from its tax assessment for the year 1926 was taken by one of the same owners concerned in the aforementioned appeals by the attorney-general, and that on January 18, 1927, appeals from their assessments were taken by the other four owners concerned in the appeals of the attorney-general for 1925. That at the January, 1927, term of the circuit court of said county, all the parties, the attorney-general, and all the owners aforesaid "got together and agreed upon a settlement of all of said causes" in accordance with which "agreed judgments were made and entered in all of said causes" in said circuit court. That it was agreed by all the parties in the said causes that the assessments of said owners for the years 1923 and 1924 should be raised, and

were by said judgments raised, in sufficient amounts that the aggregate of the increased taxes resulting therefrom was the sum of forty thousand nine hundred forty-three dollars and forty-three cents, and that by the same compromise agreement it was provided that the assessments of said owners for the years 1926 and 1927 should be lowered, and were by said judgments lowered, in sufficient amounts that the aggregate reduction of the taxes resulting therefrom was the sum of twenty-eight thousand four·hundred eighty-eight dollars and eighty-eight cents, making a completed difference in favor of the state and county of twelve thousand four hundred fifty-six dollars and sixty-six cents.

The bill further alleges that in each of the judgments aforesaid in cases wherein the attorney-general had appealed there was a recital directing the tax collector to pay to the attorney-general fifteen per cent of the increased amount of the taxes collected thereunder; that the attorney-general is insisting and demanding that the said tax collector pay over unto him fifteen per cent on the said forty thousand nine hundred forty-three dollars and forty-three cents; that the tax collector had already paid over to the attorney-general fifteen per cent on one collection of fourteen thousand two hundred forty-four dollars and forty-four cents, and was threatening to pay over fifteen per cent on the balance between said fourteen thousand two hundred forty-four dollars and forty-four cents and forty thousand nine hundred forty-three dollars and forty-three cents, and would do so through said county depository unless enjoined. On the hearing aforesaid, the chancellor dissolved the injunction, and the county appeals.

It is the first contention of the appellant county that the attorney-general is not entitled to any commissions or fees in this matter. It is pointed out that not only the attorney-general but the county attorney or the district

attorney may take these appeals with like effect, and it is argued that, since no additional fees or compensation is provided for the county attorney or district attorney, it should be construed by the court that none was intended for the attorney-general. Much is said in the briefs about the wisdom or policy of the allowance to the attorney-general of any special fees. It ought to be well understood that, except as may be precluded by constitutional provisions, and there is none here, the prerogative of fixing the compensation of public officers is one that belongs to the legislative department, and that power, when exercised, whether wisely or unwisely, whether justly or unjustly and discriminatory, does not come within our jurisdiction.

By chapter 159, Laws 1922 (section 2010, Hemingway's 1927 Code), the compensation of the attorney-general is fixed at three thousand three hundred dollars per annum, "and in addition [thereto] he shall receive fifteen per centum of all sums as he may recover by suit or otherwise." In construing this statute, we, of course, do not forget that "it is a doctrine of the common law', founded in public policy, that an officer shall be confined to the compensation, or fee prescribed" by statute. *Hendricks* v. *Lowndes Co.*, 49 Miss. 615.; *Thomas* v. *Calhoun*, 58 Miss. 80. Nor do we overlook the general rule stated in the text-books that "statutes relating to the fees and compensation of public officers must be strictly construed in favor of the government, and such officers are entitled only to what is clearly given by law" (46 C. J., p. 1019); in consequence of which we are mindful that we are to suffer no relaxation in favor of the effort of any officer to obtain as fees what does not plainly belong to him as such. On the other hand, we are not in accord with that line of cases which go so far as to hold that these statutes are to be construed as penal, and we are not in sympathy with that characterization, often

heard, of public officers as those who "feed at the public trough." We think it is sufficient to say that, if a statute granting certain fees is plain and fairly certain in its meaning, there is enough of strict construction so far as concerns that kind of a statute. It was in effect so said, as we think, in *Adams* v. *Bolivar County*, 75 Miss. at page 162, 21 So. 608, a case dealing with the same general character of statute that we have now before us. The language of the statute that the attorney-general "shall receive fifteen per centum of all sums as he may recover by suit or otherwise" is as broad and plain as the language governing the compensation of the state revenue agent, during the time when such an office was in existence, which language was: He shall be entitled to retain "twenty per centum on all amounts collected and paid over by him." Applying the decisions under that statute to the case at bar, as those decisions are reported in *Adams* v. *Bolivar Co.*, 75 Miss. 154, 21 So. 608, *Miller* v. *Delta & Pine Land Co.*, 74 Miss. 110, 20 So. 875, *Garrett* v. *Robertson*, 120 Miss. 731, 83 So. 177 and *Miller* v. *Henry*, 139 Miss. 651, 103 So. 203, the result is that we must hold that the attorney-general is entitled to the fifteen per cent on what has been recovered through his efforts in the tax assessments appeals involved in all the several cases brought into view by the bill herein.

But on the second point made by the county we do not agree with the contention of the attorney-general that he ought to receive fifteen per cent on the aggregate of the increases for the years 1923 and 1924 and takes no account against himself in respect to the decreases for the years 1926 and 1927, which latter, according to the bill, were used by way of compromise to obtain the increases first mentioned. Our view of it may be put in the form of a simple illustration: Suppose a taxpayer owns two thousand acres of land. His assessment on one thousand acres is, according to the views of the attorney-general,

too low, and the attorney-general appeals from it to the circuit court. On the other one thousand acres the owner thinks his assessment too high, and the owner appeals. Before the trial they enter into a compromise, and the compromise is carried into judgments, by which the owner agrees to an increase on the first one thousand acres so that the taxes collected thereon will amount to seven hundred fifty dollars more than would have been the case had the attorney-general not appealed, and on the second one thousand acres the result of the compromise agreement is to reduce the taxes in an amount two hundred fifty dollars less than would have been collected under the original assessment. Would it not be the completed result that the attorney-general had produced by his efforts, not seven hundred fifty dollars, but the difference between seven hundred fifty dollars and two hundred fifty dollars, or five hundred dollars? Plainly so, it seems to us. And equally plain is the result that is shown by the facts alleged in the bill in this case, to-wit, that the net result is the difference between the increase of forty thousand nine hundred forty-three dollars and forty-three cents and the decrease of twenty-eight thousand four hundred eighty-eight dollars and eighty-eight cents, or twelve thousand four hundred fifty-six dollars and sixty-six cents.

Against the foregoing conclusion, the attorney-general argues, first, that he had properly nothing to do with, or any control over, the appeals by the owners; and, second that it is speculative and problematical, if he had resisted the appeals of the owners, whether such resistance would have prevailed. As to the latter contention, the answer is that it is equally speculative, if the compromise had not been reached, whether he would have prevailed and would have obtained any increase in those cases and for those years in which he had appealed, and particularly so in view of the fact that he had lost the only one

of his said appeals which had been tried. And as to this first point, the broad and general powers of the attorney-general, under the statutes enacted in recent years, are such that it was as much his duty and privilege to appear and resist a tax appeal taken by an owner as it was to appeal against the owner; and the fact that, in resisting an appeal, he would obtain no extra fee, while in a successful appeal taken by him he would receive a fee, does not change his privilege and duties in the least. But, be that as it may, the facts are, according to the allegations of the bill, that the result in obtaining the increases for the years 1923 and 1924 was brought about by using, in the compromise reached, and as a means to the end aforesaid, the reductions mentioned for the years 1926 and 1927. If all the cases had been tried, each on its own merits without connection with any of the others, the attorney-general would have been entitled to his percentage on each case won by him, without regard to the result in the others; but, having tied or combined all of them together in one compromise agreement, the combined net result obtained thereby and not the separate component results must be taken as the basis of settlement. The principle is similar to that in any other agreement, or in a contract, that a party may not take unto himself the parts thereof which are beneficial to him and disregard those which operate against him.

We are of the opinion that the chancellor was in error in sustaining the demurrer and dismissing the bill. There are some further but more or less incidental questions remaining in the case, but, since it is to be remanded, these questions will probably disappear in the further progress of the cause, for which reason we pretermit a prolongation of this opinion by a discussion of them.

*Reversed and remanded.*