MISSISSIPPI FIRE INS. CO. *v.* EVANS *et al.*[*]

(Division A.   Feb. 25, 1929.   Suggestion of Error Overruled April 8, 1929.)

[120 So. 738.   No. 27642.]

*Corpus Juris-Cyc References: Appeal and Error, 3CJ, section 725, p. 804, n. 38; section 1568, p. 1404, n. 65; Mechanics' Liens, 40CJ, section 19, p. 57, n. 44; Schools and School Districts, 35Cyc, p. 960, n. 73; p. 961, n. 76; p. 966, n. 19, 20.

*Wells, Stevens & Jones,* for appellant.

*Butler & Snow, Howie, Howie & Latham,* and *Robertson & Campbell,* for appellees.

Argued orally by *J. Morgan Stevens* for appellant, and *George Butler* and *Chas. S. Campbell,* for appellees.

SMITH, C. J. The city of Jackson and the board of education of the city of Jackson, a city administrative board, exhibited an original bill against Pittman, the Mississippi Fire Insurance Company, and others whose connection will later appear, the substantial allegations of which, in substance, are as follows:

In March, 1927, the board of education, for and on behalf of the city of Jackson, entered into a written contract with Pittman, by which he agreed to build an addition to one of the city's school buildings, furnishing all material and labor therefor, and for which he was to receive thirty-six thousand three hundred seventy-five dollars. The building was to be constructed according to the plans and specifications provided therefor, "subject to additions and deductions as provided in  .  .  . the contract." Pittman executed a bond to the board of education in accordance with section 1, chapter 217, Laws of 1918 (section .2617, Hemingway's 1927 Code), with the Mississippi Fire Insurance Company as surety thereon.

The addition to the school was completed, and after deducting the payments made to the contractors thereon, and certain other deductions, among which is an item of damage at the rate of twenty-five dollars a day for nineteen days' delay in completing the building, such damage being stipulated for in the contract, there remained due to the contractor by the city and its board of education the sum of three thousand five hundred ninety-nine dollars and twenty-seven cents. Pittman failed to pay a number of persons, firms, and corporations, who are the other defendants to the bill hereinbefore referred to, for labor and material furnished him in the construction of the building, and notice of his failure so to do was given by them to the board of education.

The bill then avers that the balance admitted by the city and its board of education to be due the contractor is "a trust fund, to which the laborers and materialmen

who did work or furnished material in and about the construction of said additions and alterations have a right to look for the payment and liquidation of their demands, along with the Mississippi Fire Insurance Company;'' in other words, that said final payment and money, along with said bond, constitute a security and fund out of which said laborers and materialmen are entitled to be paid. . . . ''Complainants further show that they are indifferent as between the persons furnishing material and doing work in and about the construction of said building, and as to their respective claims against said balance on hand, and as against said Mississippi Fire Insurance Company, and they here now offer to pay said sum of three thousand five hundred ninety-nine dollars and twenty-seven cents into court, when and as the court may direct.''

The prayer of the bill is for process for the defendants, and ''that the court enter an order directing the distribution of said fund and relieving complainants of any and all further liability in the premises.'' By an amendment to the bill, the complainants alleged that they had incurred an attorney's fee because of the suit, and prayed an allowance therefor.

The Mississippi Fire Insurance Company filed an answer, cross-bill and demurrer in one. The demurrer challenged the sufficiency of the bill, and the right of the complainants, particularly of the board of education, to maintain it. The issues submitted thereby will hereinafter appear.

The laborers and materialmen appeared and propounded their claims, some of which were challenged by the Mississippi Fire Insurance Company. The issues thereby presented, the decisions of which are here complained of, will appear later.

The decree of the court below adjudicates the amount due Pittman by the city, and its board of education, directs its distribution to the laborers and materialmen

*pro rata,* and grants the laborers and materialmen a judgment against Pittman and the Mississippi Fire Insurance Company for the amount their claims exceeded their *pro rata* of the money to be paid by the city and its board of education. No attorney's fee was allowed complainants.

When the case came on to be heard, the demurrer of the Mississippi Fire Insurance Company was overruled. A master was then appointed to take the evidence, and to report his findings thereon to the next term of court. This he did, and the appeal is by the Mississippi Fire Insurance Company from the decree rendered on the master's report.

One of the appellant's complaints is that the case was prematurely tried, for the reason that the term of the court below, at which the demurrer was overruled and the master appointed, commenced less than thirty days after the appellant's answer was due, under section 8, chapter 151, Laws of 1924 (section 284, Hemingway's 1927 Code). The record fails to disclose that any objection on that score was interposed in the court below, and therefore any ruling the court may have made thereon is not here presented.

The right of the board of education to sue in its representative capacity was challenged both by the appellant's demurrer and answer. It will not be necessary for us to decide what power the board of education has in this connection, for the reason that it sues here only in its representative capacity, as an administrative board of the city of Jackson, and, if we should arrive at the conclusion that it could not maintain such a suit alone, the appellant here would not be benefited thereby, for the reason that the board's principal, the city of Jackson, for which it here seeks to act, is one of the complainants in the bill.

The other grounds on which the appellant predicates its demurrer to the bill are (1) that the suit is not one

by the complainants on the contractor's bond, and therefore not within the provisions of section 1, chapter 217, Laws of 1918 (section 2617, Hemingway's 1927 Code); and (2) the bill is not one of strict interpleader, nor one in the nature of an interpleader, for reasons unnecessary here to set forth, and presents no other ground for the interposition of a court of equity.

The city and board of education do not seek any relief on the contractor's bond, and therefore the suit is not within the provisions of the statute referred to, which permits laborers and materialmen to intervene in a suit by the owner of a building against the contractor and the surety on his bond; but the appellees predicate no right here on that provision of the statute.

It will not be necessary for us to decide the second of these contentions, for the reason that the appellant's answer expressly admits that the money due the contractor, in the hands of the complainants, constitutes a trust fund in which the laborers and materialmen have an interest, and to which they have a right to look for the payment and liquidation of any "legitimate demand or indebtedness had or possessed by them," and "that this defendant (the Mississippi Fire Insurance Company) has an interest in said fund as surety, as alleged in the bill. . . . That it is to the interest of any parties who furnish material and perform labor in the construction of said alterations and additions, and to the interest of this defendant [the Mississippi Fire Insurance Company] to adjudicate all issues as between them or any of them in this proceeding."

The appellant's cross-bill, among other things, prays "that the right of all parties be adjudicated in this proceeding, and the right of this defendant fixed and determined, to the end that the conflicting rights of all parties to this suit be adjudicated in this one proceeding."

It is true that, while passing on a demurrer embodied in an answer under the provisions of section 12, chapter

151, Laws of 1924 (section 358, Hemingway's Code 1927), the answer should not be looked to by the trial court. *Jefferson Davis County* v. *Berry*, 152 Miss. 578, 120 So. 572. But it is also true, both under the old practice and under the present statute, that an answer may be couched in such language as to waive the overruling of a demurrer.

After overruling the demurrer, the court below had full power thereafter to set aside its order so doing and sustain the demurrer; but the admissions of the appellant, in its answer, and the prayer of its cross-bill, not only justified the court below in, but charged it with the duty of, construing such admissions and prayer as an invitation from the appellant to proceed with the trial of the case, and the appellant cannot now object thereto.

In order that the law may not be here obscured, we deem it necessary to say that the allegation in the bill, and the admission in the appellant's answer, that the balance due Pittman by the complainants is a trust fund for the benefit of the laborers and materialmen, and the implication therefrom that the fund must be administered by the complainants as such, is based, as will hereinafter appear, on a misconception of the statute, and is not true in fact.

The right of the board of education to enter into a contract with Pittman, and to receive from him and the Mississippi Fire Insurance Company a bond for the performance of that contract, is also challenged; but that contention also presents no question for decision. The city and its board of education are not asking for a judgment against Pittman or his surety, the Mississippi Fire Insurance Company. If the board of education was without power to contract with Pittman, that fact would not relieve Pittman or his surety from their liability to the laborers and materialmen under the statute. Pittman had the right to construct the building, whether he could hold the city and its board of education therefor

or not, and, of course, owed the laborers and material-men for their labor and material used by him in con-structing the building; and the promise of his surety to guarantee his payment thereof inures to the benefit of such laborers and materialmen, without reference to any rights which the city and its board of education may have in the matter. Under the statute, the surety on such a bond contracts, not only with the obligee therein—that is, with the owner of the building—but also with all laborers employed by the builder, and all persons from whom he may have purchased material for the construction of the building.

Another of appellant's contentions is that the bond is void, for the reason that it was fraudulently obtained by the board of education, in this: That the board did not disclose to the Mississippi Fire Insurance Company certain facts known to it, and of which the Mississippi Fire Insurance Company was ignorant, and which, if known to it, would have caused it to decline to make the bond.

The board of education advertised for contracts for the construction of the building, and there were several responses thereto; Pittman being the lowest bidder by something like nine thousand dollars. It developed, probably before the contract was let, that Pittman had failed to embrace, in his estimate of the cost to him of construc-ing the building, an item aggregating something less than nine thousand dollars. Before making the bond, the appellant's representative asked the board what the various bids for the building were, which information the board declined to give, and it did not volunteer the information, if such it then had, that Pittman had omitted one item of expense in determining what his bid for the construction of the building would be. It will be unneces-sary for us to go into this question, for the reason that, even if the appellant's contention is correct, it will not

thereby be relieved from liability to the laborers and materialmen; they having no concern with the validity *vel non* of the bond, as between the appellant and the board of education, because of any fraud, if such there was, of which the board of education was guilty. 21 R. C. L. 1016; Donnelly on the Laws of Public Contracts, section 327.

The contract entered into between Pittman and the board of education for the construction of the building provides that Pittman shall be paid as the work progresses eighty-five per cent of the value of the work then done and of material therefor on the ground, proportionate to the contract price for the building, the remaining fifteen per cent to be paid to him on the completion of the building.

Pittman was a member of a partnership known as the Pittman Construction Company, and most of the payments made to him as the work progressed were by warrants payable to the Pittman Construction Company, and the proceeds thereof were not always applied to the payment of debts due by Pittman to laborers and materialmen for the work done on the building and material furnished therefor. The appellant challenges the right of the city and its board of education to so make these payments, and claims that it was prejudiced thereby. These payments were so made by Pittman's direction, and with his approval; and the city and its board of education had the right to make them either to Pittman direct or to any other person designated by him to receive them, in the absence of a statute or stipulation in the contract or bond otherwise providing, and none such has been called to our attention. *First National Bank of Aberdeen* v. *Monroe County,* 131 Miss. 828, 95 So. 726.

One of the payments made Pittman during the progress of the work exceeded the amount then due him by something over two thousand dollars, which amount was used by him for purposes other than the payment of

laborers and materialmen. This overpayment was caused by a clerical error of one of the employees of the board of education, and was deducted from a subsequent payment made by the board to Pittman.

Shortly after this overpayment was made, and before it was deducted from a subsequent payment, an arrangement was entered into under which all payments by the board of education were thereafter made to Pittman and the appellant jointly. The appellant claims that, had this overpayment not been made, it would have come into its hands and been by it applied to the payment of debts due by Pittman to laborers and materialmen, and therefore to that extent the board of education impaired its (the appellant's) security, and should now be required to pay to it, or the laborers and materialmen, the amount of the overpayment.

The fifteen per cent retainage provision in contracts of this character is one of the securities of the owner for the performance of the contract by the contractor, and also constitutes a fund to which the contractor's surety has the right to resort in the event it is compelled to pay debts due by the contractor to laborers and materialmen. *Canton Exchange Bank* v. *Yazoo County,* 144 Miss. 579, 109 So. 1. This right of the surety does not arise until the contractor has completed the work he agreed to do, or (in the event this court should, when the question is presented, adopt the rule announced by the Supreme Court of the United States in *Prairie State Nat. Bank of Chicago* v. *U. S.,* 164 U. S. 227, 17 S. Ct. 142, 41 L. Ed. 412) has defaulted thereon, and the surety on his bond has been compelled to perform it. While the contractor is proceeding with the work, the surety has no right to the money which, under the contract, the contractor receives as the work progresses. *First Nat. Bank* v. *Monroe County,* 131 Miss. 828, 95 So. 727. Compare *Indemnity Co.* v. *Acme Blow Pipe & Sheet Metal Works* (Miss.), 117 So. 251.

We agree with the master in the court below that, had the surety here been compelled to intervene and undertake the performance of Pittman's contract before the overpayment to him had been deducted from future payments due him, a different question would arise, on which we express no opinion. The bond here provides "that said principal [Pittman] shall pay all claims and demands for labor and material furnished or used in the performance of the work, and shall fully indemnify and save harmless the owner from all cost and damages which he may suffer by reason of failure so to do, and shall fully reimburse and repay the owner all outlay and expense which the owner may incur in making good any default, and shall pay all persons who have contracts directly with the principal for labor or material."

The stipulation that Pittman "shall fully indemnify and save harmless the owner from all costs and damage which he may suffer by reason" of Pittman's failure to pay debts incurred by him for labor and material adds nothing to the appellant's rights in this connection, for the reason that, as will hereinafter appear, the owner of the building was under no obligation to pay these debts, and therefore no damage could result to the owner of the building, the obligee in the bond, because of any default by Pittman in the payment of them. Whether the owner of the building would have had the right to pay these debts, and deduct the amount thereof from the money due by it to Pittman, is not herein presented, and no opinion is expressed thereon.

The brief of counsel for the appellant refers to another provision of the bond, which is as follows: "If at any time there come to the notice or knowledge of the obligee information that any claim for labor performed or for material furnished the principal in or upon the work specified in the contract remains unpaid, or that any lien or notice of lien for such work or materials has been filed or served, the obligee shall withhold from the prin-

cipal payment of any moneys due or to become due to the principal under the contract until the payment of such claim or discharge of such lien or notice of lien, and will so notify the surety giving a statement of the particular fact and the amount of such claim, lien or notice of lien.''

No breach of this provision of the bond was assigned by appellant's answer or cross-bill, and no relief predicated thereon is prayed for in the cross-bill. Consequently, no question relative thereto is here presented.

The claims of certain materialmen that were allowed in the court below are here objected to as not being supported by the evidence, but we are of the opinion that the contrary is true. The questions presented in this connection are not of sufficient importance to justify a more detailed statement thereof.

The court below allowed some of the materialmen interest on the money due them by Pittman from the date the money became due. This is objected to by the appellant, on the ground that the bond covers only the principal of the debt due by Pittman to laborers and materialmen. The bond does not expressly provide for interest on such debts, but interest thereon follows as a necessary incident thereto, under chapter 229, Laws of 1912 (Hemingway's 1927 Code, section 2223), and in *Stowell* v. *Clark* (Miss.), 118 So. 370, was held to be within the obligation of a builder's surety bond. In *McElrath & Rogers* v. *W. G. Kimmons & Sons,* 146 Miss. 775, 112 So. 164, 680, Division B of this court disallowed a claim of interest by a subcontractor against the surety on a contractor's bond. Whether the court there acted under the general rule, or because of facts peculiar to that case, does not appear; the question being there disposed of simply by the statement that ''we do not think the interest claimed is maintainable in the present suit.'' The same division of the court thereafter held that such in-

terest is within the obligation of a building contractor's bond in *Stowell* v. *Clark, supra.*

This brings us to the cross-assignment of errors filed by the board of education and the city of Jackson, who will hereafter be referred to as cross-appellants. The contract provides for the completion of the building on or before August 15, 1927, and "that the contractor shall pay the owner the sum of twenty-five dollars per day as liquidated damages for each day of delay (exclusive of Sundays) in the delivery of the building on and after August 15, 1927."

The building was not completed on August 15, 1927, and the architect extended the time therefor to September 15, 1927, and the building was thereafter completed on October 7, 1927, resulting in nineteen days' delay. This delay was claimed by Pittman to have been caused by changes made in the plans and specifications, necessitating additional work on the building by him. The city and board of education claimed an allowance of four hundred seventy-five dollars for nineteen days of this delay, but the claim was not allowed by the court below. This ruling of the court is objected to by the cross-appellants on two grounds: (1) The architect's decision in the matter is final and conclusive; but if not (2) the delay beyond thirty days was unreasonable.

The specifications annexed to and made part of the contract provide for the making, by the owner, of changes in plans and specifications, and that "any claim for extension of time caused thereby shall be adjusted at the time of ordering such change." Other portions of the specifications here material are as follows:

"Article 10. The architect shall, within a reasonable time, make decisions on all claims of the owner or contractor and on all other matters relating to the execution and progress of the work or the interpretation of the contract documents. The architect's decisions, in mat-

ters relating to artistic effect, shall be final, if within the terms of the contract documents. Except as above or as otherwise expressly provided in these general conditions or in the specifications, all the architect's decisions are subject to arbitration.''

''Article 35. If the contractor·be delayed at the completion of the work . . . by changes ordered in the work, . . . or by any cause which the architect shall decide to justify the delay, then the time for completion shall be extended for such reasonable time as the architect may decide. This article does not exclude the recovery of damages for delay by either party under article 39 or other provisions in the contract documents.''

''Article 39. If either .party to this contract should suffer damage in any manner because of any wrongful act or neglect of the other party or of any one employed by him, then he shall be reimbursed by the other party for such damage.''

Assuming for the sake of the argument, but not deciding, that an architect's decision in such matters is final and conclusive, when made so by a building and conconstruction contract, neither the contract nor the sepcifications here, expressly or by necessary implication, so provide; and, as we construe the last clause of article 10 of the specifications, the contrary is expressly provided. It is true that the provision there is that the architect's decisions are subject to arbitration.; nevertheless they are thereby left open to review, and the agreement to arbitrate does not oust the courts of jurisdiction. 5 C. J. 20, sections 7, 42, and 68. Compare *Scottish Union & Nat. Ins. Co.* v. *Skaggs,* 114 Miss. 618, 75 So. 437, where an agreement to arbitrate was consummated. The court below committed no error in refusing to make this allowance.

The cross-appellants complain of the refusal of the court below to award it an attorney's fee. Neither the contract nor any statute· called to our attention author-

izes the allowance of this fee. Therefore the court below committed no error in not allowing it. *National Surety Co. of New York* v. *Trustees of Runnelstown Con. School*, 146 Miss. 277, 111 So. 445.

As we understand the theory of the cross-appellants on which this attorney's fee is claimed, it is that the failure of Pittman to pay laborers and materialmen is a breach of his contract, which not only rendered his surety liable therefor, but also rendered the cross-appellants liable therefor to the extent of the fifteen per cent retainage fund due Pittman at the completion of the building; that because of this breach of his contract by Pittman they were under the necessity of instituting this suit, thereby incurring an attorney's fee, for which Pittman and his surety are liable as damages covered by the contract and bond.

The failure to pay laborers and materialmen by Pittman was a breach of his contract, and his surety is liable to the laborers and materialmen for the amounts due them by Pittman; but no liability to them was thereby imposed on the cross-appellants, neither the contract nor any statute so providing. Section 1, chapter 217, Laws 1918 (Hemingway's 1927 Code, section 2617), obligates the surety on bonds of the character of the one here to pay debts incurred by the contractor to laborers and materialmen, and gives them a right of action against the surety therefor, but imposes no liability therefor on the owner of the building.

The claim that the owner of the building is liable to laborers and materialmen for debts due them by the contractor to the extent of the money retained by him until the completion of the building, and that such money constitutes a trust fund for the payment of such debts, is based on a misconception of the holding of this court in *Canton Exchange Bank* v. *Yazoo County*, 144 Miss. 579, 109 So. 1. In that case the county of Yazoo owed a contractor several thousand dollars for a public road,

which had been completed, and which the contractor had assigned to the Canton Exchange Bank. The contractor had failed to pay debts due by him to laborers and materialmen, incurred for the construction of the road, and the money due him by the county was claimed by the surety company, which had guaranteed the performance of his contract, and which had paid the debts due by the contractor to the laborers and materialmen, as it was obligated by the statute to do, and by the Canton Exchange Bank, the contractor's assignee. The county filed a bill of interpleader, paid the money into court, and had the contesting parties summoned to litigate the right of the funds as between them. The court below held, setting forth its views in a written opinion, that the retainage fund was one of the securities for the performance of the contract, and, when the surety was compelled to pay debts due by the contractor to laborers and materialmen, that it became thereby subrogated to the contractor's right to collect the retainage fund from the county. Such was the contention of counsel for the surety on the appeal to this court, as will appear from the excerpt from their brief set forth in 144 Miss. at page 592.

This court upheld this claim of the surety to the right of subrogation, without specifically setting forth of the right to which the surety was being subrogated. It did not hold that the county was under any obligation to the laborers and materialmen, or that the money retained by it until the completion of the road was a trust fund for the payment of laborers and materialmen. This court had frequently theretofore held, and we here again say, that laborers and materialmen have no claim against the state or other public body, in the absence of a valid contract or statute so providing, for labor or material furnished for any public work. *U. S. F. & G. Co.* v. *Marathon Lbr. Co.*, 119 Miss. 803, 81 So. 492; *First Nat. Bank* v. *Monroe County,* 131 Miss. 828, 95 So. 727; *Nat. Surety Co.* v. *Hall-Miller Decorating Co.,* 104 Miss. 626, 61 So.

700, 46 L. R. A. (N. S.) 325; *McGraw* v. *Board of Supervisors,* 125 Miss. 420, 87 So. 897.

During the progress of the work the cross-appellants agreed with Pittman to substitute stone of a character different from that specified for use in erecting the building, that they would themselves purchase and pay for the substituted stone, and that Pittman would allow them a reduction of nine thousand dollars on the amount he was to receive for constructing the building. Pittman had arranged to purchase the stone originally specified for eight thousand four hundred dollars, including transportation charges, but was having difficulty in obtaining the delivery thereof. The court below charged the cross-appellants with six hundred dollars, the difference between the nine thousand dollars deducted from the contract price of the building, and the eight thousand four hundred dollars which the stone originally contemplated would have cost Pittman.

The specifications for the building provide for the making of changes therein, and the bond provides "that any alterations which may be made in the terms of the contract, or in the work to be done under it, . . . or any forbearance on the part of either the owner or the principal to the other shall not in any way release the principal or surety . . . from their liability hereunder." The cross-appellants therefore had the right to relieve Pittman of using the stone required by the specifications, to agree with him that they would themselves furnish other stone in lieu thereof, and to agree with Pittman on what deduction should be made on the contract price of the building because thereof. That the amount of this reduction exceeds what the stone would probably have cost Pittman is of no consequence, in the absence of fraud or mistake. The court below should not have charged this item to the cross-appellants.

In the brief of Ray Wright Sheet Metal & Tile Works, one of the materialmen, complaint is made that the court

below declined to allow it interest on the debt due it by Pittman. No cross-assignment of error complaining of this ruling of the court below has been filed, and consequently no question relative thereto is here presented.

The decree of the court below would be affirmed, but for the error therein in charging the cross-appellants with the six hundred dollars growing out of the substituted stone agreement. It will therefore be set aside, and a decree will be rendered here identical therewith, except that the amount to be paid by the city and board of education will be reduced by six hundred dollars.

Reversed in part on the cross-appeal, and decree rendered here.

*Reversed and decree rendered.*