## FRANKLINVILLE REALTY CO. v. ARNOLD CONST. CO.

### No. 9801.

Circuit Court of Appeals, Fifth Circuit.

June 3, 1941.

T. J. Blackwell, W. H. Walker, Jr., and Herschel E. Smith, all of Miami, Fla., and Arthur Richenthal, of New York City, for appellant.

Bert Winters, W. J. Lake, and Paul W. Potter, all of West Palm Beach, Fla., for appellee.

M. N. Dunn and W. H. Mizell, both of West Palm Beach, Fla., for intervener.

Before FOSTER, SIBLEY, and Mc-CORD, Circuit Judges.

McCORD, Circuit Judge.

Arnold Construction Company, a Florida corporation, brought suit against Franklin-ville Realty Company, a Pennsylvania corporation, to enforce a contractor's lien against certain lands in Palm Beach County, Florida, under the provisions of the Uniform Mechanic's Lien Act of Florida, Compiled General Laws of Florida, Perm. Supp., Vol. 4, Sec. 5396(1) et seq., Chapt. 17097, General Laws of Florida, 1935. On July 19, 1939, the court entered an order of reference as provided by Rule 53 of the Rules of Civil Procedure for District Courts, 28 U.S.C.A. following section 723c. About twenty hearings were held before the Special Master, who filed his report on July 30, 1940. After a hearing on the report and exceptions filed by the defendant, the court referred the matter back to the Special

Master for further findings of fact. The Special Master filed his supplemental report on October 29, 1940, and after a hearing the court confirmed the report with few minor changes. Thereupon judgment was entered for the plaintiff and Franklinville Realty Company appealed.

The record reveals that Arnold Construction Company and R. B. Strassburger, president of Franklinville Realty Company, entered into negotiations on or about March 7, 1937, for the construction of an elaborate beach house in Palm Beach. On March 8, 1937, Strassburger and Arnold visited the property and Strassburger instructed Arnold to go right ahead with the job. Although the parties at first agreed that Arnold Construction Company was to do the work upon the basis of cost plus a ten per cent contractor's fee, this agreement was altered by an exchange of letters between Strassburger and Arnold on March 19th and 24th whereby Arnold agreed to construct the development according to plans and specifications prepared by Strassburger's architects, Treanor & Fatio, for a total fee of $3,000.00 "above all costs involved in the construction of the project mentioned." Actual construction was commenced on the project shortly after March 24, 1937, and the two letters above mentioned constituted the only written agreement between the parties until May 5, 1937, when Arnold signed a written contract with Franklinville Realty Company.

Between March 24th and May 5th Arnold Construction Company proceeded to make verbal contracts with sub-contractors for electrical wiring, plumbing, millwork, and masonry, according to the completed plans and specifications available, and by May 5th a considerable amount of work had been done by sub-contractors. On April 29th Kite, the secretary of Franklinville Realty Company, advised Arnold by telegram that the company's representative would arrive in Palm Beach the following Sunday morning relative to the "Strassburger job". On May 3, 1937, George M. Hitchcock arrived in Palm Beach with letters of introduction from Strassburger and Kite. The letters were addressed to the architects, Treanor & Fatio. The letter from Strassburger was dated April 25, 1937, and stated: "This will serve to introduce to you Mr. G. M. Hitchcock who represents the Franklinville Realty Company." The letter from Kite

bore date of April 28, 1937, and stated: "This will introduce to you Mr. George M. Hitchcock who has been designated by the Franklinville Realty Company to work with you on the construction of Mr. Strassburger's beach house. Mr. Hitchcock has been working for this company since its inception. Both Mr. Strassburger and I have utmost confidence in his ability, and will thank you to extend every courtesy to him during his visits to Palm Beach. He will verbally explain to you the various changes and the progress of the work as desired by Mr. Strassburger."

W. H. Arnold, vice-president of Arnold Construction Company, called at the offices of the architects and read the letters of introduction from Strassburger and Kite. Arnold and Hitchcock conferred with each other, and Hitchcock delivered to Arnold a copy of the proposed construction contract he had brought with him. Arnold discussed the contract with his attorney, certain additions were made, and it was signed by Arnold on May 5th. Hitchcock took the contract to Pennsylvania where it was signed by Kite for the Realty Company. The contract was returned to Arnold about two weeks later. Prior to the signing of the contract and on April 28, 1937, Strassburger sailed for France, where he remained for several months.

After execution of the contract, work continued on the job, and Hitchcock, who was a graduate architect, supervised the construction, made suggestions, conferred with the architects and contractor from time to time, and according to the testimony of Arnold and the architects, he inspected the various sub-contracts as they were received, and approved and passed on them. There is testimony that the sub-contracts let by Arnold Construction Company were approved by the architects, and that all contracts let after May 5th were let with the knowledge and approval of Hitchcock. Hitchcock admitted that he knew sub-contractors were on the job, but denied that he knew the amount of sub-contracts until after June 21, 1937.

In accordance with the contract, requisitions were presented to the architects by Arnold Construction Company. The statements were checked, and architect's certificates were issued, and Franklinville Realty Company made payments to Arnold from time to time as provided by the contract. However, payments by the owner later fell behind, and on June 22, 1937,

Arnold Construction Company sent a cable to Strassburger in Paris, France, advising him, "We have at present time twenty thousand dollars in money in your job and outstanding obligations to all subcontractors for a considerable sum of money." Thereafter on June 24th Kite advised Arnold that he had heard from Strassburger and that "he will forward you on July 1st a substantial payment on your expenditures for beach house." On June 30th Strassburger advised Arnold that he was instructing Kite to make a payment of $20,000 on July 1st. The $20,000 payment was made, and part of this sum was used by Arnold to pay sub-contractor's bills for labor and materials.

Strassburger, becoming displeased at the mounting costs of his house, ordered the job shut down in July, 1937, and in August directed that it be boarded in. Architect's certificates for the job through the shut down date aggregated $53,129.50, as compared with payments of $30,500 made by Franklinville to Arnold. Using these figures and allowing certain credits to the owner the Special Master determined the defendant's liability to Arnold to be $20,805.89. With a few minor exceptions the court approved the findings and conclusions of the Special Master and added to the amount found to be due certain items of interest and allowed a total recovery of $26,253.18.

■ The appellant insists that the court erred in sustaining the report of the Special Master, and contends that the sub-contracts "were not approved and let directly by the owner and plaintiff cannot recover therefor since it did not comply with Article 10 of the contract." Appellant relies upon that portion of Article 10 of the contract which provides: "Separate Contracts. All portions of the work that the contractor's organization has not been accustomed to perform or that the owner may direct, shall be executed under separate contracts let by the Owner direct." The Special Master was of opinion that Article 10 was superseded by the addendum to Article 7 which provides for payments to the contractor for use "toward payment of material, labor and subcontractor's bills." The court disagreed with the Special Master on this point, but agreed "in his conclusion that the defendant, by its course of conduct in connection with the performance of the contract by the plaintiff and by the defendant waived such right as it ever had to require that the said sub-contracts be let by the defendant." The Special Master was of the further opinion that in view of Articles 35, 36, and 37, relating to "separate contracts" and "sub-contracts", "a fair construction of said Article 10 would seem to be that it has reference, not to sub-contracts of the particular nature actually let by the contractor, but to contracts of the character let by Defendant to which I have referred." The separate contracts let by the defendant were for the building of a sea wall and a groyne, separate work not covered by the contract made with the plaintiff. We agree with and adopt this construction of Article 10, and hold that it has no relation to sub-contracts such as those let by Arnold for work and materials, all of which sub-contracts were approved by the architects as provided by Article 36 titled "Subcontracts".

■ It is clear that when the written contract was executed on May 5, 1937, the plaintiff had already employed four sub-contractors, and the largest sub-contract, which was for the swimming pool and plumbing, was known to Strassburger and the sub-contractor verbally approved by him at the very beginning. The appellant's representative came to Palm Beach and took over the task of looking after the interest of Strassburger and Franklinville Realty Company. He was introduced by both Strassburger and Kite as the company's representative, without limitation, who would explain the various changes and progress of the work as desired by Strassburger. Moreover, Strassburger further emphasized the authority of Hitchcock to represent him by a cable to Arnold on June 22, 1937, in which he stated, "As I cabled you nobody can act for the company except Mr. Kite and the inspector Mr. Hitchcock." Hitchcock remained on the job, and although he testified that he had no authority to let contracts it appears that he did let contracts for landscaping. The evidence is amply sufficient to sustain the finding of the Special Master and the court that Hitchcock was more than a mere "clerk of the works", and that he was empowered by Strassburger and Franklinville Realty Company to represent the company, and that he did approve the sub-contracts which were let by Arnold. Hitchcock's acts did not constitute an abandonment of the contract, he acted for the owner in furtherance of the contract, well within his apparent authority.

It further appears that aside from the knowledge and approval of Hitchcock, the fact that sub-contractors were on the job was brought home directly to Strassburger in the cable for additional funds, and he made no objection, but thereafter made a payment of $20,000 to Arnold. He actually knew of the letting of the sub-contract for the pool and plumbing, and being a man of experience in building matters must have known that other sub-contractors would be employed and that Arnold Construction Company was not going to make the hardware, doors, and other mill-work needed for the home, the contracts for which are among those in dispute. We agree with the court below that it was the real intention of the parties that the sub-contracts should be let by the contractor with the approval of the architects. All the parties thought the letting of sub-contracts was regular, and no complaint was made until the aggregate ran up so high. The practical interpretation placed upon the contract by the parties themselves in performance of it is entitled to great weight, and we are of opinion and so hold that the sub-contracts were let in conformity with the written contract, and, furthermore, that Franklinville Realty Company by its conduct, knowledge, and acquiescence in the manner of the performance of the contract approved and ratified the letting of the sub-contracts by Arnold and may not now complain. Knabb v. R. F. C., 144 Fla. 110, 197 So. 707; Old Colony Trust Co. v. Omaha, 230 U.S. 100, 33 S.Ct. 967, 57 L.Ed. 1410; Manhattan Life Ins. Co. v. Wright, 8 Cir., 126 F. 82; Topliff v. Topliff, 122 U.S. 121, 7 S.Ct. 1057, 30 L.Ed. 1110; Livingston v. Malever, 103 Fla. 200, 137 So. 113; Freygang v. Vera Cruz & Pac. R. Co., 4 Cir., 154 F. 640.

Appellant further contends that Arnold could not foreclose its lien because compliance with the provisions of Section 4(3) of the Uniform Mechanic's Lien Act of Florida is not alleged. The section relied upon provides that the contractor shall give the owner a statement under oath "stating, if that be the fact, that all lienors contracting directly with or directly employed by such contractor have been paid in full or, if the fact be otherwise, showing the name of each such lienor." Any defect in the plaintiff's allegations was cured by the defendant's answer acknowledging receipt of the sworn statement. Cf. Hogue v. D. N. Morrison Const. Co., 115 Fla. 293, 156 So. 377, 95 A.L.R. 357; Dodson v. Florida Nursing & Landscape Co., 138 Fla. 887, 190 So. 695; Buker v. Webster, 140 Fla. 471, 191 So. 835; Texas & N. O. R. Co. v. Miller, 221 U.S. 408, 31 S.Ct. 534, 55 L.Ed. 789.

The one point upon which the case must be reversed is the finding that the architect's certificates are final and conclusive as to the amount due for work done and materials furnished. The certificates issued by the architect were issued pursuant to Article 14 of the contract which requires that he check the contractor's statement and "promptly issue certificates to the Owner for all such as he approves, which certificates shall be payable upon issuance." By the terms of the contract the decision of the architect shall be final only in matters relating to artistic effect. The contract does not provide that the certificates shall be final and conclusive in other regards and such provision may not be implied. In the absence of specific provision in a contract such as this that architect's certificates are to be final, such certificates do not have conclusive effect, but are merely prima facie evidence of their contents. Mercantile Trust Co. v. Hensey, 205 U.S. 298, 27 S.Ct. 535, 51 L. Ed. 811, 10 Ann.Cas. 572, and cases cited; Duval County v. Charlestown Engineering Co., 101 Fla. 341, 134 So. 509; Mississippi Fire Ins. Co. v. Evans, 153 Miss. 635, 120 So. 738; Abercrombie v. Vandiver, 126 Ala. 513, 28 So. 491.

Arnold Construction Company had authority to let sub-contracts and purchase materials and is entitled to recover for the labor and services performed, and materials furnished, and for materials specially fabricated for inclusion, but not installed, if such materials are being held awaiting instructions of the owner. Chapter 17097, Sec. 14, Acts of 1935.

Because of the error in holding the certificates final and conclusive the case will be reversed for further proceedings limited to the presentation of evidence as to whether or not the labor and services listed in the certificates were actually used on the job, and whether or not the materials listed were actually used or specially fabricated for use in the building. Judgment will be entered after such findings have been made.

The judgment is affirmed in part and reversed in part and the cause is remanded

for further proceedings in conformity with this opinion. Costs of this appeal are to be divided between appellant and appellee.