471 So.2d 325 (1985)
AETNA CASUALTY & SURETY COMPANY
v.
DOLEAC ELECTRIC COMPANY, INC.
No. 54571.
Supreme Court of Mississippi.
March 6, 1985.
Petition for Rehearing Withdrawn July 10, 1985.
*326 Aultman, Tyner, Weathers & Gunn, Lawrence C. Gunn, Jr., Hattiesburg, for appellant.
M. Ronald Doleac, Finch, Wicht & Doleac, Hattiesburg, for appellee.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and PRATHER, JJ.
PRATHER, Justice, for the Court:
This appeal addresses liabilities of a surety on a public works construction bond. Three "co-prime" contractors were awarded contracts by the Mississippi State Building Commission to construct a public building. Doleac Electric Company (Doleac), one of the "co-prime" contractors sued the surety, Aetna Casualty and Surety Company (Aetna), of another prime contractor on the same construction project for breach of contract. From a judgment awarded against Aetna in the Chancery Court of Forrest County, both parties appeal.
Aetna appeals assigning as error:
(1) The chancery court erred in proceeding with the suit where the obligee failed to publish notice of final acceptance of the project and appellee failed to publish notice of the pendency of the suit as required by Miss. Code Ann. §§ 31-5-7 and 31-5-15 (1972).
(2) The chancery court erred in awarding damages for extra labor costs where the work performed was required under the terms of the initial contract;
(3) The chancery court erred in awarding Doleac damages for fixed overhead expenses.
Doleac cross-appeals assigning as error:
(1) The trial court erred in denying appellee damages for loss of profit resulting from breach of contract;
(2) The lower court erred in denying Doleac prejudgment interest on its damages;
(3) The lower court erred in denying Doleac attorney's fees as an item of damage.

I.
On October 15, 1973, the Mississippi State Building Commission, obligee, awarded three separate and substantially identical "co-prime" contracts for the construction of a Student Union Building on the Campus of the University of Southern Mississippi at Hattiesburg. These contracts were with Hanberry Corporation, for the general building construction, Mississippi Mechanical Contractors, Inc., for the mechanical installations and construction, and appellee, Doleac Electric Co., Inc., for the electrical work. The appellant, Aetna Casualty *327 & Surety Co., entered into a performance-payment bond as surety for Mississippi Mechanical Contractors, Inc.
Each of the three co-prime contractors agreed in their respective contracts with the State Building Commission to coordinate their work and cooperate with each other so as to facilitate the completion of the project within 487 days.
On June 2, 1975, Mississippi Mechanical withdrew from the job, defaulting in the performance of its contract with the state. The mechanical construction was completed by another construction company secured and paid by the appellant, Aetna Casualty & Surety Co.
On September 3, 1981, Doleac instituted this action against Aetna for damages caused by the delay in construction resulting from Mississippi Mechanical's default. The suit was originally filed in circuit court with another similar suit by the third co-prime contractor, Hanberry, on the same project. The suit was transferred to chancery court because of the complex issues involved, and according to the briefs, the suit by Hanberry was settled and is not in issue.

II.
The first issue is whether the lack of publication notice of final acceptance and the lack of publication of notice of the pendency of this suit defeated the jurisdiction of the trial court?
The statutory basis of this suit is founded on Miss. Code Ann. § 31-5-1 (1972) et seq. governing public works contracts. The purpose of these provisions is to provide protection for persons providing labor and materials on public construction projects in the absence of mechanics' and laborers' lien rights on public property. Miss. Fire Ins. Co. v. Evans, 153 Miss. 635, 120 So. 738 (1929); National Surety Co. v. Hall-Miller Decorating Co., 104 Miss. 626, 61 So. 700 (1913); Yarbrough, Rights and Remedies Under Mississippi's New Public Construction Bond Statute, 51 Miss.L.J. 351 (1980). The procedure requires two publication notices: (1) by the obligee, State Building Commission, stating that the construction has been given final acceptance to trigger the limitation of actions period and (2) a second publication by a party initiating a suit for unpaid labor or materials against the surety to notify all other unpaid laborers and materialmen who may desire to intervene. The second notice contemplates that only one lawsuit will be filed against a surety. United States Fidelity and Guaranty Co. v. Plumbing Wholesale Co., 175 Miss. 675, 166 So. 529 (1936). Any person entitled to sue may intervene within the time allowed for bringing suit. Miss. Code Ann. § 31-5-9 (1972).
Appellant argues that the chancery court lacked jurisdiction to proceed with this suit because the statutory prerequisites of the two above publications on a performance payment bond for a public construction project have not been met.[1] Miss. Code Ann. § 31-5-7 (1972) provides as follows:
When suit is instituted by any of such persons on a bond, it shall not be commenced until after the complete performance of said contract and final settlement thereof, and shall be commenced within one year after the performance and final settlement of said contract and not later. If the contractor quits or abandons the contract before its completion, suit may be instituted by any such person on said bond and shall be commenced within one year after such abandonment and not later. But said time for the institution of said action shall not begin to run until the obligee shall have made said final settlement or determined said abandonment and published notice thereof in some newspaper published in said county, or if there be none then in some newspaper having a general circulation therein. (Emphasis added).
*328 Additionally, Miss. Code Ann. § 31-5-13 (1972) provides as follows:
In all suits instituted under the provisions of this chapter, notice of the pendency of such suits shall be made by publication in some newspaper of general circulation published in the county or town where the contract is being performed, and if there be no such paper, then in a paper having a general circulation therein, for at least three weeks, the last publication to be at least one week before the trial of said cause. In all such suits the parties interested shall be summoned as provided by section 85-7-145. (Emphasis added).
This Court has repeatedly held that notice of final acceptance and notice of pendency of the suit by laborers and materialmen provided by the statutes governing public work contracts are jurisdictional. Stanton & Associates, Inc. v. Bryant Construction Co. (No. 54,599, decided Feb. 20, 1985, but not yet reported); Travelers Indemnity Co. v. Munro Oil & Paint Co., 364 So.2d 667 (Miss. 1978); U.S.F. & G. Co. v. Plumbing Wholesale Co., supra; Kershaw v. Day, 176 Miss. 757, 169 So. 690 (1936); Dunn, "Federal and State Statutory and Case Law Pertinent to Construction Contract Claims and Litigation  Suits on Public Bonds And Suits on Private Bonds", Construction Litigation 137 (1976). In the case sub judice, it is undisputed that the State Building Commission never published final acceptance of the Student Union Project and Doleac failed to publish notice of the pendency of its suit.
Doleac argues that the above statutory requirements do not apply to a suit by one co-prime contractor against the surety of another "co-prime" contractor, citing Hanberry Corp. v. State Building Commission, 390 So.2d 277 (Miss. 1980). The Hanberry case arose out of this same Student Union building contract. Hanberry Corp., the general building contractor, sued Aetna as surety for Mississippi Mechanical, claiming  as Doleac does in the case at bar  that it suffered damages as a result of Mississippi Mechanical's default in the completion of the project. This Court's decision in Hanberry was grounded in the two contracts of the parties. First, the contract of Hanberry with the Building Commission provided that all three co-prime contractors would coordinate their operations with those of the other parallel contractors and settle with the other parallel contractors for any damage to the work for negligence acts. Secondly, the payment/performance bond between Aetna and its principal provided that Aetna would guarantee to perform "all the undertakings, covenants, terms, conditions, and agreements of said contract with [the State Building Commission] ..." undertaken by its principal. 390 So.2d 281.
This Court concluded in Hanberry that the contract of each co-prime contractor made the other parallel contractors third party beneficiaries. Having determined that third-party beneficiary rights applied, the court concluded that the express terms and extent of Aetna's undertaking under its bond would control its liabilities. Aetna contracted to perform all "undertakings, covenants, conditions, and agreements of said contract" between the Building Commission and Mechanical. A breach was alleged against Aetna "who stepped into the shoes of Mechanical," and a cause of action was stated.
This Court's opinion in Hanberry does not discuss the threshold jurisdictional question raised by appellant's first assignment of error that the failure to give the two statutory notices makes this suit premature.
Therefore, the question which must be addressed is whether a suit by one co-prime contractor against the surety of another co-prime contractor based upon a performance payment bond obtained pursuant to this state's Public Works Contracts statute is subject to the publication and notice requirements of that statute?
To answer this threshold question, this Court notes that Hanberry was appealed to this Court on the sustaining of demurrers by the trial court. The substantive rights of third party beneficiaries under *329 parallel contracts, or co-prime contracts, were addressed by this Court and that cause remanded for a trial on the merits as to Hanberry and Aetna. It was not intended by this Court that, upon remand, the necessary publication notice to creditors to confer jurisdiction to the trial court would not be followed. Rather, it was expected that having settled the unanswered substantive questions of law of Hanberry, that the necessary procedural requisites would be followed. That decision did not hold the publication notice unnecessary, but expected the necessary jurisdictional notices to be given as statutorily required.
The reason and necessity for our expectation is obvious. The purpose of a surety bond on a public works contract is to protect potential claims of unpaid laborers and materialmen. Without the publication notice to this statutorily-protected class, the monetary limit of the surety bond could be exhausted by suits between co-prime contractors leaving unpaid laborers and materialmen without a remedy.
This Court notes that this building contract was let by the State Building Commission to three separate prime contracts. The letting of separate multiple prime contracts is not the usual practice in the construction industry. See Lerner, "Arbitration of Construction Industry Disputes", Construction Litigation at 149-153 (1976).[2] It is unlikely that such a practice was contemplated by the legislature when it enacted sections 31-5-1 et seq. for the protection of those furnishing labor or materials on a public construction project. Further indication that multiple prime contracts were not contemplated by the legislature is the fact that as between co-prime contractors, as one class, and laborers and materialmen, as another class, the statutes Miss. Code Ann. § 31-5-1 et seq., do not address priority of claims as between (1) co-prime contractors and (2) laborers and materialmen.
Having noted this practice of issuing multiple prime contracts, and turning back to the issue before us, this Court holds that the notice requirements of sections 31-5-7 and 31-5-13 are jurisdictional prerequisites to suits between parallel or co-prime contractors under public construction contracts when a surety bond under Miss. Code Ann. § 31-5-1 et seq. is involved. Accordingly, the failure of appellee Doleac to publish notice of the pendency of this suit does render invalid the judgment of the court below to Doleac.
Therefore, in order to protect the potential claims of unpaid laborers and materialmen on this project, we reverse the judgment of the trial court in favor of Doleac and remand for a new trial after such time as appellee Doleac gives notice of this suit as provided by section 31-5-13. If, during the statutory time period for bringing suit, see section 31-5-7, additional claims materialize these claims should, upon application of Aetna, be tried together. See section 31-5-9.

III.
In our supervisory capacity, we address the other assignments of error to avoid a second appeal directed to the same subject matter.
The trial court awarded Doleac $29,495.17 for additional labor costs; $923.16 for the additional cost of builder's risk insurance coverage; $11,924.12 for additional over-head during the over-run period; and $841.34 for interest on retainage.
Aetna does not contest the award for builder's risk insurance coverage, nor the award for interest on retainage funds withheld by the State Building Commission from Doleac during the time of the over-run. Additionally, Aetna concedes that Doleac is entitled to $3,293.32 for increased labor cost as a result of Union pay scale increases which occurred after the scheduled completion date. The bulk of the trial court's award of damages for additional labor and the lower court's award of damage for additional overhead are challenged *330 by appellant's remaining assignments of error.

A. ADDITIONAL LABOR COSTS:
The general rule with respect to damages resulting from breach of contract is that where complete performance is prevented by either party, the other who is willing to perform is entitled to damages sufficient to make him whole. Beech v. Johnson, 102 Miss. 419, 59 So. 800 (1912). The plaintiff in such a case is entitled to recover any damages directly attributable to the defendant's breach. Luria Brothers & Co. v. United States, 369 F.2d 701 (Ct.Cl. 1966); J.D. Hedin Construction Co. v. United States, 347 F.2d 235, (Ct.Cl. 1965).
An element of damage claimed in the case sub judice is loss of productivity of its labor.
That loss of productivity of labor resulting from improper delays caused by defendant is an item of damages for which plaintiff is entitled to recover admits of no doubt, Abbett Electric Corp. v. United States, 162 F. Supp. 772, 142 Ct.Cl. 609 (1958); nor does the impossibility of proving the amount with exactitude bar recovery for the item ... (citations omitted).
It is a rare case where loss of productivity can be proven by books and records; almost always it has to be proven by the opinions of expert witnesses. However, the mere expression of an estimate as to the amount of productivity loss by an expert witness with nothing to support it will not establish the fundamental fact of resultant injury nor provide a sufficient basis for making a reasonably correct approximation of damages. See Wunderlich Contracting Co. v. United States, 351 F.2d 956, 968, 173 Ct.Cl. 180, 199 (1965).
Luria Brothers, supra, at 712-713.
Donald Doleac, duly qualified as an expert in the field of electrical construction, testified that the failure of Mississippi Mechanical to coordinate its work with the other contractors resulted in a substantial loss of productivity on the part of Doleac. Mr. Doleac testified, for example, that the failure of Mississippi Mechanical to insulate pipes prevented the general contractor from installing the ceiling grid; this in turn prevented Doleac from installing the light fixtures. Additionally, Doleac testified that conduit previously installed had to be re-routed as a result of the failure of Mississippi Mechanical to coordinate its work; that no electrical work could be performed in the tunnel area because water had seeped in as a result of Mississippi Mechanical's breach; a boiler couldn't be installed because of unfinished duct work; and that his men had to be moved around in a cost-ineffective manner to work piecemeal in areas of the building.
Malcolm Wetsell, inspector for Benham & Perkins, inspecting architects on the project, also testified that, as a result of duct work left incomplete by Mississippi Mechanical, light fixtures could not be installed by the electrical contractor. George Reed, architect with Landry & Reed, the principal architects on the project, testified that the delay in the progress of the general and electrical contractors was the result of the delay by Mississippi Mechanical. Among the examples given by Mr. Reed were the fact that conduit could not be put in place because Mississippi Mechanical had not installed the necessary ducts and the fact that final electrical connections could not be made because Mississippi Mechanical had failed to install the necessary motors.
In the case sub judice, the unrebutted testimony of Donald Doleac was, unlike the testimony offered in Luria Brothers, corroborated in several material respects. The chancellor's award was not, as appellant suggests, based solely on the testimony of Donald Doleac.
This assignment of error is without merit.

B. OFFICE OVERHEAD:
Aetna acknowledges the general rule that home office overhead is a well-recognized item of damage for delay and an injured party is entitled to recover it. Guy James Construction Co. v. Trinity Industries *331 Co., 644 F.2d 525 (5th Cir.1981); J.D. Hedin Construction Co. v. United States, 347 F.2d 235 (Ct.Cl. 1965); General Insurance Co. of America v. Hercules Construction Co., 385 F.2d 13 (8th Cir.1967).
In the case sub judice Mr. Doleac testified that the overhead expense was calculated by taking the percentage of the overhead attributable to the project (5.9 percent) and applying it to the total overhead expense during the over-run period.
Recovery for office overhead is allowed where the cost of overhead attributable to the particular job is applied prorata to the additional time required to complete the job as a result of the breach. See General Insurance Co. of America v. Hercules Construction Co., supra at 22; Luria Brothers, supra at 710-711; J.D. Hedin Construction Company, supra, at 259.
This assignment of error is without merit.

IV.
On the cross-appeal of Doleac, the first assignment challenges the lower court's denial of appellee Doleac's damages for loss of profit.
It was stipulated at trial that a reasonable amount of profit for an electrical contractor to make on a project such as this is ten percent. Doleac argues that the trial court erred in failing to award damages for profit of $4,141.93 or 10% of the additional labor ($29,495.17) and overhead expense ($11,924.12) awards. In support of this position, Mr. Doleac testified that he would compute profit as 10 percent of the additional labor and overhead expense. Doleac also testified to the necessity of his laborers having to redo items of improperly performed work.
In J.D. Hedin Construction Co., supra, the Court expressly denied a contractor's claim to a profit of 10% on the excess costs incurred upon the defendant's breach of contract. 347 F.2d at 259. This Court finds no error in the chancellor's denial of damages for loss of profit under Doleac's admission of negligence. This Court affirms the trial court's ruling on this issue.

V.
Did the trial court err in denying appellee Doleac prejudgment interest?
Doleac argues that it is entitled to interest of 8% per annum as of July 13, 1976, the date Aetna denied Doleac's claim by letter.
An award of prejudgment interest rests in the discretion of the awarding judge. Glantz Contracting Co. v. General Elec. Co., 379 So.2d 912, 918 (Miss. 1980); Dunn v. Koehring Co., 546 F.2d 1193, 1201 (5th Cir.), Reh'g Denied in Part, Granted in Part, 551 F.2d 73 (5th Cir.1977). Under Mississippi law prejudgment interests may be allowed in cases where the amount due is liquidated when the claim is originally made, or where the denial of the claim is frivolous or in bad faith. Stanton & Associates, Inc. v. Bryant Construction Co., supra; McDaniel Bros. Construction Co. v. Jordy, 195 So.2d 922, 927 (Miss. 1967); Cf. O.J. Stanton & Co., Inc. v. Dennis, 360 So.2d 669, 673 (Miss. 1978); Home Ins. Co. v. Olmstad, 355 So.2d 310, 314 (Miss. 1978).
In the case sub judice, damages were unliquidated. Doleac does not allege that Aetna's denial of responsibility for damages was either frivolous or in bad faith. To the contrary, the record reflects a legitimate dispute as to the amount of damages.
Therefore, the lower court did not err in denying Doleac's claim for prejudgment interests.

VI.
Did the trial court err in denying appellee Doleac Attorney's fees?
At trial, Doleac's attorneys proved services totaling $5,521.42 (R. 676-682). Doleac argues that the lower court should have awarded attorney's fees since the fees were a direct and immediate consequence of the breach.
*332 The general rule is that exemplary damages are not ordinarily recoverable in actions for breach of contract. 22 Am.Jur.2d, Damages, § 245 (1965). This Court has accordingly held that an award of attorney's fees is improper where the infliction of punitive damages is not justified. Stanton & Associates, Inc. v. Bryant Construction Co., supra; Aetna Casualty & Surety Co. v. Steele, 373 So.2d 797 (Miss. 1979).
Punitive damages are recoverable in an action for breach of contract where the breach was intentionally wrong or amounted to such insult, abuse or gross negligence as to consist of an independent tort. (R. 367) College Life Ins. Co. of America v. Byrd, 367 So.2d 929 (Miss. 1979). As stated above, Doleac did not allege or prove conduct on the part of Aetna justifying punitive damages. Accordingly, the trial court's refusal to award attorney's fees was not error.
Finding the appeal premature, the judgment of the lower court is reversed and the cause remanded for giving of proper statutory notice and retrial.
REVERSED AND REMANDED.
WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, ROBERTSON and ANDERSON, JJ., concur.
PATTERSON, C.J., and SULLIVAN, J., not participating.
NOTES
[1] In 1980, the statutes governing surety bonds on public construction projects were amended, changing the law in this area significantly. However, since the contract upon which this suit is based was entered into before April 1, 1981, the case sub judice is governed by the former statutes. See 51 Miss.L.J. 351 (1981).
[2] The Hanberry decision pointedly acknowledged that this unusual practice "might be questioned in the construction industry ..." 390 So.2d at 282.